913 So.2d 1083 (2005)
Michael WALTMAN
v.
William Robert ROWELL.
1031960.
Supreme Court of Alabama.
May 20, 2005.
*1084 James B. Rossler of Rossler & Redditt, LLC, Mobile, for appellant.
Donald E. Brutkiewicz of Brutkiewicz Attorneys, Mobile, for appellee.
STUART, Justice.
William Robert Rowell filed an election contest, challenging the results of an August 24, 2004, municipal election for the District 3 seat on the Citronelle City Council. Michael Waltman appeals from the trial court's judgment in favor of Rowell. We reverse and remand.

Facts
On August 24, 2004, the City of Citronelle held a municipal election. Michael Waltman, the incumbent holding the District 3 seat on the Citronelle City Council, was running for reelection. William Robert Rowell was the challenger for the District 3 seat. After the election, Waltman was declared the winner.
Rowell then filed this election challenge in the Mobile Circuit Court, arguing that illegal or ineligible votes had been included in tallying the votes for Waltman and that, upon a proper recount, Rowell should be declared the winner. Pursuant to § 17-4-127, Ala.Code 1975, and § 11-46-109, Ala. Code 1975, Rowell contested both absentee ballots and "challenged" ballots filed on the day of the election.[1] Waltman responded by contesting certain votes that Waltman says were illegal or ineligible and that had been included in the tally for Rowell.
The trial court conducted a hearing on the election contest on September 8-10, 2004. By the time of the hearing, the votes had been recounted and the official vote tally had changed; Waltman and Rowell had 177 votes each. Pursuant to the trial court's order, the City of Citronelle produced election documents relevant to the contested race for the District 3 seat.[2] Those documents included the "affidavits of challenged voters" filed by some of the challenged electors.[3]
Ore tenus evidence was presented at the hearing. However, none of the *1085 challenged electors testified at the hearing.[4] Rowell called as a witness, among others, Gayther Rowell, the chief inspector of the polls for the August 24, 2004, election.[5] Gayther testified as to where she knew various of the challenged electors lived, whether she believed the residences of those challenged electors were located in the city limits of Citronelle, and, if so, whether the residences were located in District 3 or in another district. Rowell also called as a witness Wesley Raymond Rowell, who also testified as to where, based on his knowledge and belief, certain of the challenged electors lived.[6]
Rowell also called Diane D. Barnett, who at that time was employed by the City of Citronelle as the city clerk and treasurer. Barnett, in her capacity as the city clerk, responded to the trial court's order to produce the election records. Included in those records were the "absentee manager's voter list" and a list of voters whose ballots were challenged. Barnett testified as to where various of those challenged voters lived; Barnett also testified as to each challenged voter whether, to her knowledge and understanding, the address provided by the voter on the challenged ballots as his or her then current residence was located in District 3.
Finally, Rowell called Virginia Delchamps, the chairperson of the Mobile County Board of Registrars. Delchamps testified that she had confirmed that the nine names of voters whose ballots were being challenged submitted to her by Rowell's attorney represented voters who were registered to vote on the day of the August 24, 2004, election.[7] She testified, however, that many of those electors lived outside the city limits of Citronelle and were therefore ineligible to vote in a municipal election for the City of Citronelle. She also testified that a few of the nine voters lived in Citronelle but that they lived in a municipal district other than District 3.
At the close of the hearing, the trial judge orally declared Rowell to be the winner of the election. In its written order dated September 22, 2004, the trial court stated:
"The Court finds that the correct count of the votes cast in the election for City Council District 3, City of Citronelle was 177 votes for Plaintiff William Rowell and 177 votes for Defendant Michael Waltman. [W.H.B.] cast a challenged ballot for Waltman, and the parties have stipulated that Mr. [B.] did not reside in District 3 and was not eligible *1086 to vote for this council seat. This left the vote at Rowell 177 and Waltman 176.
"Each party has contended that other voters who cast challenged ballots were not eligible to vote in District 3. Each of these voters asserted under oath that he or she was a resident of District 3. The Court finds that there is not sufficient evidence as to any of these voters to establish the falsity of their declaration of the fact of their alleged non-residency.
"The challenge of William Rowell is upheld and he is declared elected to the City Council of the City of Citronelle, District 3."
Waltman appealed, asserting (1) that the trial court erred by not declaring invalid those votes cast in favor of Rowell by persons who resided outside the city limits of Citronelle and (2) that the trial court erred by not declaring invalid those votes that were cast in favor of Rowell by persons who resided in council districts other than District 3. Waltman asserts that the trial court's decision is plainly and palpably wrong and that it is unsupported by the evidence of record. Rowell did not cross-appeal.

Standard of Review
As noted in Williams v. Lide, 628 So.2d 531, 534 (Ala.1993):
"In reviewing the trial court's findings of fact in this election contest, we apply the same standard used by appellate courts when the trial court in a nonjury case has taken a material part of the evidence through ore tenus testimony; that is, we will not disturb the trial court's findings of fact unless those findings are plainly and palpably wrong and not supported by the evidence."
This Court has also recognized:
"It is the policy of this court to presume correct the findings of the trial court based upon competent evidence, when the evidence is presented ore tenus. Such findings will not be disturbed upon appeal if supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous and manifestly unjust. The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment."
Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985) (citations omitted). Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts. "[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment." Griggs v. Driftwood Landing, Inc., 620 So.2d 582, 586 (Ala.1993).

Applicable Law
We first recite the statutes and legal principles applicable to this dispute.[8] Section 11-46-38, Ala.Code 1975, provides:
"(a) At all municipal elections the elector must vote only in the ward or precinct of his residence where he is registered to vote and at the box or voting machine to which he has been assigned.
"(b) No person may vote at any such election unless he is a registered and qualified elector of the State of Alabama, who has resided in the county 30 days and in the ward 30 days prior to the election and who has registered not less than 10 days prior to the date of the *1087 election at which he offers to vote; provided, however, that any elector who, within 30 days next preceding the date of the election at which he offers to vote, has removed from one ward to another ward in the same city or town shall have the right to vote in the ward from which he has removed, if he would have been entitled to vote at such ward but for such removal. If any elector attempts to vote in any ward other than that of his residence, except as hereinabove authorized, his vote must be rejected.
"(c) Any qualified elector of a ward who knows or suspects that a person proposes to vote or will offer to vote in such ward who is not entitled or duly qualified to vote in such ward may challenge such person. The challenge shall be communicated to the inspector before the challenged person is permitted to vote by the person in charge of admissions to the polling place. The person so challenged shall not be permitted to vote until he takes and subscribes the oath prescribed by subsection (c) of Section 11-46-41 and identifies himself in the manner therein prescribed."
Section 11-46-39, Ala.Code 1975, addresses the identification of challenged voters and the process of challenging voters. This section provides, in pertinent part:
"(a) Where paper ballots are used, the inspector designated as challenger, upon the elector's entering the polling place, shall examine the list of qualified electors furnished by the municipal clerk pursuant to subsection (a) of Section 11-46-36, and if it appears from this examination that the person is a qualified elector of the state authorized to vote at that box, unless such elector has been challenged by another qualified elector in the manner prescribed by subsection (c) of Section 11-46-38, the inspectors shall then give him one ballot on the stub of which one of the inspectors shall write or shall have already written his name or initials. If such person's name does not appear on the list of qualified voters for that ward or box, then the challenger shall challenge said person. Any person so challenged or challenged by a qualified elector as authorized in subsection (c) of Section 11-46-38, shall not be allowed to vote until he has taken and subscribed to the oath prescribed in subsection (c) of Section 11-46-41 and proved his identity in the manner therein prescribed. However, if such person duly executes the oath and establishes his identity in the manner prescribed, then his ballot must be received and deposited in the ballot box in the same manner as the ballots of qualified electors."
Section 11-46-41, Ala.Code 1975, sets forth the form of oaths to be taken by challenged voters and the penalty to be assessed against a voter for providing a false oath. That section provides:
"(a) Before any person who has been challenged by an inspector or a qualified elector as authorized by subsection (c) of Section 11-46-38 shall be allowed to vote, he shall take and subscribe to an oath in the form prescribed in subsection (c) of this section and in addition prove his identity and residence in the state, county, municipality and ward in which he offers to vote by the oath of some elector personally known to one of the inspectors to be a qualified elector and a freeholder and householder.
"(b) Before administering the oath prescribed, one of the inspectors shall inform the challenged person that if he takes the oath willfully and falsely he is guilty of perjury and, on conviction, may be imprisoned in the penitentiary for not less than one nor more than five years. *1088 One of the inspectors shall also inform any person making the affidavit of identity that if he makes such oath willfully and falsely, he may be punished, upon conviction, at hard labor for the county for not more than 12 months or by a fine of not less than $500.00 nor more than $2,000.00 or by both fine and sentence to hard labor.
"(c) The oath required by subsection (a) of this section of the challenged elector shall be tendered, read and administered to him by one of the inspectors, shall be executed in duplicate, and shall be in the following form:
"`State of Alabama, county of ______. I do solemnly swear (or affirm): 1. That I am a duly qualified elector under the Constitution and laws of the State of Alabama. 2. That I have resided in the state of Alabama 30 days next preceding this day. 3. That I have resided 30 days in this county next preceding this day. 4. That I have actually resided 30 days in this ward next preceding this day, or within 30 days next preceding this day have removed from this ward to another ward in this incorporated town or city, and would have been entitled to vote but for such removal; I am registered to vote in this ward (county precinct). 5. That I am 18 years of age or upwards. 6. That I have not been convicted of any crime which disfranchises me. 7. That I have been duly registered. 8. I know of no reason why I am not entitled to vote. 9. I am generally known by the name under which I now desire to vote, which is ________. 10. I have not voted and will not vote in any other ward (or if the ward has been divided into districts, in any other voting district) in this election. 11. My occupation is ________ the name of my employer is ________. 12. My residence is __________ (if in a city or town, give street number). 13. During the last 30 days I have resided at _______. 14. That __________ and __________ have personal knowledge of my residence in the State of Alabama for 30 days, in this county for 30 days and in this ward for 30 days next preceding this day. 15. This affidavit has been read to me. So help me God.
"`____________ Signature.
"`Subscribed and sworn to me before this _____ day of _____, [20]____.'
"(d) The oath to establish identity of a challenged applicant to vote shall be executed in duplicate and shall be in the following form:
"`State of Alabama, county of ________. I, __________, do solemnly swear (or affirm) that I have known __________ (here insert the name of the person offering to vote) for the last 30 days next preceding this election, and that he has been a resident of this state for said time, 30 days in this county, and he has actually resided in this ward for the last 30 days preceding this election, (or within 30 days next preceding the date of this election, he removed from this ward to another ward in this incorporated town or city and would have been entitled to vote but for such removal), all immediately preceding this election. I do solemnly swear (or affirm) that I am a qualified elector of this ward; that I have been a freeholder and householder in this ward for 30 days next preceding this election; that my occupation is _______; that my residence is ________; my address is ________.
"`_________ Signature.

*1089 "`Subscribed and sworn to before me this _____ day of _____, [20]____.'
"(e) After the oaths required by subsection (a) of this section have been duly taken and subscribed, the ballot of the person offering to vote must be received and deposited in the ballot box as the ballots of qualified electors.
"(f) Should a person be challenged after he has received a ballot and refuse to take [the] oath or fail to prove his identity and residence by the oath of a freeholder or householder as required by subsection (a) of this section, his vote shall be rejected and his ballot marked with his name shall be laid aside by the inspectors."
Section 17-4-127, Ala.Code 1975, provides:
"It shall be unlawful for any elector to cast his or her ballot during any general election, primary election, municipal election or special election in any precinct, any district, any ward, or any other subdivision where his or her name does not duly appear upon the official list of such precinct, district, ward, or subdivision. All ballots cast in any election contrary to this section are hereby declared illegal and, upon a contest duly instituted, the ballots shall be excluded in determining the final result of any election; provided, that nothing in this section shall prevent any qualified elector residing in the precinct, ward, or voting district from voting after presenting a proper certificate from the board of registrars, or from voting a provisional ballot when his or her name does not duly appear upon the official list of the precinct, district, ward, or subdivision."
Section 17-7-13, Ala.Code 1975, provides:
"At all elections held within this state, the elector shall vote in the county and precinct of his or her residence and nowhere else and shall have registered as provided in this title. If any elector attempts to vote in any precinct other than that of his or her residence, his or her vote shall be rejected, except when casting a provisional ballot as provided by law."
We also note that it is the responsibility of a party seeking to have a vote excluded to make a prima facie showing that the vote was illegally cast. See Eubanks v. Hale, 752 So.2d 1113, 1145 (Ala.1999), citing Shepherd v. Sartain, 185 Ala. 439, 64 So. 57 (1913), and Black v. Pate, 130 Ala. 514, 30 So. 434 (1901). "Where there is no prima facie showing that a vote was illegally cast, that vote cannot be excluded." Eubanks, 752 So.2d at 1145. As the Eubanks Court quoted:
"`Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote... and to have their votes counted.... In [United States v.] Mosley[, 238 U.S. 383 (1915),] the Court stated that it is "as equally unquestionable that the right to have one's vote counted is as open to protection ... as the right to put a ballot in a box."'"
Eubanks, 752 So.2d at 1150 n. 18 (quoting Reynolds v. Sims, 377 U.S. 533, 554-55, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)). Addressing the requirements of the absentee-voting statutes, the Eubanks Court stated:
"It is the established law in this state that:
"`"... a person be not disfranchised as to his right as an elector... when he has made an honest *1090 effort to comply with the law and in that effort has substantially complied with the statutory mandates."'
"Woodall v. City of Gadsden, 278 Ala. 634, 636, 179 So.2d 759, 761 (1965). Further, as we stated in our August 20, 1999, remand order:
"`[T]he requirement that there be substantial compliance with the election laws, as articulated in Williams v. Lide, 628 So.2d 531 (Ala.1993), was not rejected in the aftermath of Roe v. Alabama, 43 F.3d 574 (11th Cir.1995), cert. denied, Davis v. Alabama, 516 U.S. 908, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995). It seems clear to us that, so long as any irregularities in the voting process do not "adversely affect the sanctity of the ballot and the integrity of the election," substantial compliance "with the essential requirements of the absentee voting law" is sufficient. Williams, supra, at 536.'
"752 So.2d at 1128. Finally, we note that the right of citizens to vote is perhaps the most basic and cherished right of our democratic system, and we must construe the voting laws `in order to effectuate the legislative purpose of protecting and furthering a citizen's right to vote,' Wells v. Ellis, 551 So.2d 382, 383 (Ala.1989), so long as the sanctity of the election process is preserved."
Eubanks, 752 So.2d at 1150 (footnote omitted). Although Eubanks addressed an elector's right to vote by absentee ballot, the general principles applied in Eubanks are also relevant in this case.
For the convenience of the reader, we will keep a running tally of the votes as we discuss each category of challenged voters. Our starting points are the totals presented to the trial court at the beginning of the election-contest hearing  177 votes for each candidate. Because Waltman stipulated before the trial court that the vote cast in his favor by W.B. should not be counted, we immediately reduce Waltman's vote tally by one. Thus, we begin our analysis with a vote tally of 177 for Rowell and 176 for Waltman. There were no additional votes to be added. Therefore, with regard to each of the challenged ballots discussed below, the only question is whether it is to be excluded and therefore subtracted from our totals.

Analysis
Waltman first argues that the trial court erred by not declaring invalid the challenged ballots cast in favor of Rowell by persons who lived outside the city limits of Citronelle. Waltman asserts that unless electors lived within the municipal limits of Citronelle, they were ineligible to vote in the August 24, 2004, election for the Citronelle City Council. With certain limited exceptions provided in the statute, we agree with Waltman.
As provided in § 11-46-38, Ala.Code 1975:
"(a) At all municipal elections the elector must vote only in the ward or precinct of his residence where he is registered to vote and at the box or voting machine to which he has been assigned.
"(b) No person may vote at any such election unless he is a registered and qualified elector of the State of Alabama, who has resided in the county 30 days and in the ward 30 days prior to the election and who has registered not less than 10 days prior to the date of the election at which he offers to vote ...."
(Emphasis added.) See also Hawkins v. Persons, 484 So.2d 1072, 1073 n. 3 (Ala.1986) (recognizing that votes cast in a municipal city council election by electors who *1091 lived outside the city limits should not have been counted).
Under § 11-46-38, Ala.Code 1975, the elector must be registered to vote in the county of his or her residence and, with certain limited exceptions relating to an elector's move to a different ward or district within a city, must vote only in the ward or precinct of the elector's residence.
"A person is eligible to vote in a municipal election if he is a qualified elector of Alabama who has resided in the city in which he seeks to vote for at least 30 days prior to the election and if he has properly registered to vote in the county in which the city is located at least 10 days before the election."
Hawkins, 484 So.2d at 1074. Accordingly, if the evidence before the trial court established that a challenged elector did not live within the city limits of Citronelle, that challenged elector was ineligible to vote in the municipal election held on August 24, 2004, for the City of Citronelle.
Waltman also argues that the trial court erred by not declaring invalid those challenged ballots cast in favor of Rowell by electors who, although registered to vote and residing in Citronelle, did not reside in District 3. Waltman argues that unless the electors lived in District 3, they were ineligible to vote in the election for the District 3 seat.
Again, we agree with Waltman. As stated in § 11-46-38, Ala.Code 1975:
"(a) At all municipal elections the elector must vote only in the ward or precinct of his residence where he is registered to vote and at the box or voting machine to which he has been assigned.
"(b) No person may vote at any such election unless he is a registered and qualified elector of the State of Alabama, who has resided in the county 30 days and in the ward 30 days prior to the election and who has registered not less than 10 days prior to the date of the election at which he offers to vote; provided, however, that any elector who, within 30 days next preceding the date of the election at which he offers to vote, has removed from one ward to another ward in the same city or town shall have the right to vote in the ward from which he has removed, if he would have been entitled to vote at such ward but for such removal. If any elector attempts to vote in any ward other than that of his residence, except as hereinabove authorized, his vote must be rejected."
(Emphasis added.) Thus, with the certain limited exception set out in § 11-46-38(b), even if a challenged elector was registered to vote in Mobile County and lived in the City of Citronelle on the day of the municipal election, if the evidence at the hearing established that the elector's residence was not within District 3, that challenged elector was ineligible to vote for the District 3 seat on the Citronelle City Council.
We now examine the challenged ballots submitted in favor of Rowell. The record accompanying this appeal includes the affidavit of C.H., one of the challenged voters. In his affidavit, C.H. indicated that he lived at an address located in the City of Mobile. Therefore, on its face, C.H.'s affidavit established that he was ineligible to vote in the Citronelle municipal election. However, the trial court failed to disqualify C.H.'s vote; failing to do so was plain and palpable error. Because C.H.'s ballot was submitted in favor of Rowell, Rowell's total vote tally is reduced from 177 to 176; Waltman's vote remains at 176.
The record also contains the affidavit of F.W., a challenged voter; F.W. cast a challenged ballot in favor of Rowell. On her affidavit, F.W. specified a street address. *1092 However, at the hearing, Diane Barnett, who was then the city clerk and treasurer for Citronelle, testified that a portion of F.W.'s property was located inside the city limits of Citronelle and another portion was located outside the city limits of Citronelle. Barnett testified that F.W.'s house was located within the Citronelle city limits.
However, the chairperson of the Mobile County Board of Registrars testified that F.W.'s house was located within District 4 of Citronelle. Because F.W. did not reside within District 3 on the date of the election and because she did not qualify as a voter recently removed from District 3, she was ineligible to vote in the August 24, 2004, election for the District 3 seat on the Citronelle City Council. Because F.W. voted for Rowell, Rowell's vote tally is further reduced from 176 to 175; Waltman's vote tally remains at 176.
We note that Rowell did not cross-appeal and that, therefore, Waltman's vote tally would not be affected by further analysis of the remaining votes. Therefore, even if we concluded that the trial court had properly counted all of the remaining votes in favor of Rowell, Waltman would remain the winner of this election by at least one vote. For this reason and based on the state of the record before us, we need not and do not address the remaining challenged ballots.
Based on our review of the record, we conclude that Waltman won the District 3 seat on the Citronelle City Council by at least one vote. We conclude that the findings on which the trial court's order declaring Rowell to be the winner of the election contest was based were plainly and palpably erroneous. We, therefore, reverse the order of the trial court and remand this cause for entry of an order declaring Waltman the winner of the election for the District 3 seat on the Citronelle City Council.
REVERSED AND REMANDED WITH DIRECTIONS.
NABERS, C.J., and SEE, HARWOOD, WOODALL, SMITH, and BOLIN, JJ., concur.
LYONS and PARKER, JJ., concur specially.
LYONS, Justice (concurring specially).
I agree with the majority's conclusion that the votes cast by F.W. and C.H. in favor of Rowell in the election for the District 3 seat on the Citronelle City Council cannot be counted.
Section 11-46-41, Ala.Code 1975, sets forth the form of oaths to be taken by challenged voters and the penalty to be assessed against a voter for providing a false oath. That section provides for an affidavit that includes a statement as to the affiant's address. See § 11-46-41(c)(12). While F.W.'s and C.H.'s affidavits are not a part of the record, the evidence is undisputed, as the majority points out, that the address given in each of their affidavits is outside District 3.
The trial court found "that there is not sufficient evidence as to any of these voters to establish the falsity of their declaration of the fact of their alleged non-residency." The trial court thus appears to have allowed the affidavits to trump the registration list. But the trial court could not rely upon C.H.'s and F.W.'s affidavits, which set forth addresses established without contradiction at the trial to be outside District 3. While these affidavits, we must assume, also contained the requisite averment, "I have actually resided 30 days in this ward next preceding this day," § 11-46-41(c)(4), neither F.W. nor C.H. was called as a witness at trial to explain the obvious inconsistency in these statements *1093 as to their respective addresses that was developed by Waltman's evidence. I must conclude that the proof at trial of an internally inconsistent affidavit is prima facie evidence of an illegal vote. On this state of the record, the trial court's conclusion as to lack of evidence to establish the falsity of these affidavits, in the face of Waltman's unrebutted prima facie showing that these two votes were illegally cast, cannot stand. When these votes are thrown out, even if we affirm the trial court as to its allowing the affidavits to have primacy in all other instances, Waltman wins by one vote.
PARKER, J., concurs.
NOTES
[1] Rowell challenged a vote for Waltman cast by C.R. by absentee ballot. The trial court heard testimony regarding this vote at the hearing on the election contest; however, the trial court's final order did not disqualify C.R.'s absentee ballot. Therefore, we assume C.R.'s vote is included in the final vote total of 176 determined by the trial court to have been properly cast in favor of Waltman. Rowell did not appeal from this determination.
[2] Included in these documents were the election results for Districts 2, 4, and 5. According to the record, the City of Citronelle has two polling places: a separate polling place for voters in District 1 and another polling place for voters in Districts 2, 3, 4, and 5. Only residents of District 3 were eligible to vote for the District 3 seat on the city council.
[3] At the hearing before the trial court, the parties addressed and argued the alleged illegality or ineligibility of the ballots cast on August 24, 2004, by several of the challenged electors; however, the exhibits submitted to this Court contain no corresponding "affidavits of challenged voters" for those electors. We find no objection from either party to the absence of these affidavits from the record on appeal; therefore, we assume that the legality or ineligibility of these "votes" was tried by the consent of the parties.
[4] None of the electors whose ballots were challenged testified at the hearing to support the declarations made in their affidavits. It is unusual for such electors not to testify in an election contest in which it is alleged that electors casting challenged ballots were ineligible to vote because they lived outside the city limits or outside the district. However, neither Rowell nor Waltman objected or argued that the affidavits were inadmissible as evidence; we therefore have no basis on which to reject the affidavits as evidence. We simply note that generally a witness must appear at a trial to testify in support of the contents of an affidavit. To allow otherwise would defeat a party's right to cross-examine witnesses and might impede other applicable rules of evidence and civil procedure.
[5] Gayther Rowell is related by marriage to William Robert Rowell.
[6] Wesley Raymond Rowell is the brother of William Robert Rowell.
[7] Plaintiff's Exhibit 1, the letter signed by Delchamps, contained the names of nine electors. According to Delchamps, Rowell's lawyer asked her to verify whether the persons listed on the letter were registered to vote on the day the municipal election for the District 3 seat was held.
[8] Because the City of Citronelle has a mayor and city council form of government, we refer to the appropriate sections found in Art. 2, Title 11, Ala.Code 1975.