The plaintiff, I-359, Inc. ("I-359"), appeals a final judgment insofar as it held that I-359 was not entitled to (1) reformation of a ground lease dated June 1, 1994 ("the original lease"), (2) a partial refund of the rent I-359 had paid pursuant to the original lease, and (3) the recovery of a portion of its attorneys' fees. I-359 also appeals an earlier partial summary judgment holding that its breach-of-contract and breach-of-covenant claims were barred by the applicable statute of limitations.
The defendants, AmSouth Bank, in its capacity as trustee under the will of Irene Parker, deceased; AmSouth Bank, in its capacity as trustee under the will of David 0. Parker, Jr., deceased; Glenda P. Dendy; Glenda Alexander; Parker Barber; Patricia Irene Parker Littrell; Carol Jeanette Parker Shelton; Mary Elizabeth Wood; Thomas A. Satterfield, Jr.; David Alan Satterfield; and Jeanette Parker Satterfield, who are the present owners of the land leased to I-359 in the original lease, cross-appeal the final judgment insofar as it declared that certain new leases ("the new leases"), which covered portions of the land covered by the original lease, had superseded the original lease with respect to the land covered by the new leases.
We affirm the final judgment in its entirety, affirm the partial summary judgment with respect to I-359's breach-of-contract claim, reverse the partial summary judgment with respect to I-359's breach-of-covenant claim, and remand the action to the trial court for further proceedings consistent with this opinion.
 Factual Background and Procedural History
In the original lease, the defendants or their predecessors in interest ("the landowners") leased land located in Tuscaloosa County ("the land") to I-359. Approximately six months after the effective date of the original lease, I-359 had the land surveyed. The survey indicated that the land contained approximately five acres less than I-359 had believed it contained when I-359 executed the original lease, and, therefore, I-359 demanded a reduction *Page 421 
in the rent specified by the original lease. However, the landowners refused to reduce the rent. Subsequently, the landowners and I-359 executed an agreement dated January 25, 1996 ("the 1996 agreement") in which they agreed, among other things, that, as I-359 subleased portions of the land to third parties, I-359 and the landowners would execute (1) new leases with respect to those subleased portions of the land and (2) amendments of the original lease deleting those subleased portions from the original lease. Between January 25, 1996, and June 1, 2004, the landowners and I-359 executed a number of new leases covering the subleased portions of the land and seven amendments of the original lease deleting the subleased portions of the land from the original lease.
On June 1, 2004, I-359 sued the defendants, asserting three claims. I-359's first claim alleged that I-359 and the landowners had "entered into a contract for the lease of certain premises" and that the defendants had "breached their contract in that the land area leased to [I-359] is deficient and less than represented." I-359's second claim alleged that "[t]he [original] lease entered into by and between the parties contains various covenants respecting the title to the property being leased to [I-359] by [the landowners]" and that "[t]hese covenants have been breached in that [the landowners] did not own a portion of the property being leased to [I-359] at the time the [original lease] was entered into." I-359's third claim alleged that "[t]he mistake [regarding the acreage of the land] contained in the [original lease] is a mutual mistake or a mistake on the part of [I-359], which [the landowners] should have known" and sought reformation of the original lease to reduce the rent.
The defendants moved for a summary judgment on the ground that all three of I-359's claims were barred by the 6-year statute of limitations specified by § 6-2-34(4), Ala. Code 1975, for breach-of-contract claims. In opposition to the summary-judgment motion, I-359 argued that its claims were not barred because they were governed by the 10-year statute of limitations specified by § 6-2-33(2), Ala. Code 1975, for claims seeking the recovery of land rather than the 6-year statute of limitations contained in § 6-2-34(4). The trial court granted the defendants' summary-judgment motion with respect to I-359's first and second claims, but it denied the summary-judgment motion with respect to I-359's third claim.
Subsequently, I-359 amended its complaint to add two claims alleging that, subsequent to June 1, 2004, the defendants had breached the 1996 agreement by failing to timely execute several new leases and an eighth amendment of the original lease. One of those claims sought an injunction compelling the defendants to execute the new leases and the eighth amendment of the original lease; the other sought recovery of the attorneys' fees I-359 had incurred in amending its complaint to seek the injunction. However, the trial court and the parties treated I-359's claim seeking an injunction as being moot because the defendants executed the new leases and the eighth amendment of the original lease the same day I-359 added this claim.
I-359 later amended its complaint to add a claim seeking a declaration that the portions of the land that were subject to the new leases were no longer subject to the original lease; that the new leases were independent leases whose existence did not depend on the existence of the original lease; and that, once all the land was subject to new leases, no more rent would be payable under the original lease. *Page 422 
Following a bench trial, the trial judge entered a final judgment in which he found that, although the rent payable under each new lease was based on a per-acre calculation, the rent payable under the original lease was not based on a per-acre calculation and, on the basis of that finding, concluded that the parties' mistake regarding the number of acres contained by the land did not justify reforming the original lease to reduce the rent payable under the original lease. The trial judge further concluded that, because I-359 was not entitled to reformation of the original lease, it likewise was not entitled to a refund of any of the rent it had paid under the original lease or a recovery of any of its attorneys' fees. However, the trial court held that I-359 was entitled to declaratory relief regarding the effect of the new leases on the original lease, and, consequently, it declared that the new leases superseded the original lease with respect to the portions of the land covered by the new leases; that the new leases were independent leases whose existence did not depend on the continued existence of the original lease; and, therefore, that I-359 would not be obligated to extend the term of the original lease as a condition precedent to extending the terms of the new leases.
I-359 and the defendants both filed postjudgment motions, which the trial court denied. I-359 then appealed to the supreme court, and the defendants cross-appealed. Subsequently, the supreme court transferred the appeal and the cross-appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
 Standard of Review
We review the partial summary judgment de novo. SeeNorthwest Florida Truss, Inc. v. Baldwin County Comm'n,782 So.2d 274, 276 (Ala. 2000). Because the trial judge based his final judgment on ore tenus evidence, our review of that judgment is governed by the following principles:
 "`[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So.2d 122, 125 (Ala. 2002). `"The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment."' Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985)). `Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts.' Id."
Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005).
 Analysis I. The Partial Summary Judgment
Citing Lost Creek Coal Mineral Land Co. v.Hendon, 215 Ala. 212, 110 So. 308 (1926); Cook v.Exchange Realty Mortgage Co., 374 So.2d 1339, 1341
(Ala. 1979); and Scofield v. Cheatham, 485 So.2d 722,723 (Ala. 1986), for the proposition that the 10-year statute of limitations specified by § 6-2-33(2) governs claims alleging breaches of covenants regarding title to land, I-359 argues that its first and second claims both alleged breaches of covenants regarding title and, therefore, that the trial court erred in holding that those claims were barred by the 6-year statute of limitations specified by § 6-2-34(4) for breach-of-contract claims. Section 6-2-33(2) provides:
 "The following actions must be commenced within 10 years: *Page 423 
 ". . . .
 "(2) Actions for the recovery of lands, tenements or hereditaments or the possession thereof, except as otherwise provided in this article."
(Emphasis added.)
We agree with I-359's contention that its second claim alleged breaches of covenants regarding title and, therefore, that the 10-year statute of limitations specified by § 6-2-33(2) applies to I-359's second claim. Although the covenants at issue in the case now before us are contained in a lease whereas the covenants at issue in Lost Creek, Cook, and Scofield were contained in deeds, they are nonetheless covenants regarding the landowners' title to land and they pertain to the landowners' ability to provide I-359 with possession of that land. Section 6-2-33(2) expressly provides that it governs actions for the recovery ofpossession, of land as well as title to land. Therefore, we conclude that, because the Alabama Supreme Court held in Lost Creek, Cook, and Scofield that the 10-year statute of limitations specified by § 6-2-33(2) governs claims alleging breaches of covenants regarding title to land in deeds, the 10-year statute of limitations specified by § 6-2-33(2) also governs claims alleging breaches of covenants regarding title to land in leases. Therefore, we reverse the partial summary judgment with respect to I-359's second claim.[1]
However, I-359's first claim alleged a breach of a contract to lease the land rather than a breach of a covenant regarding the landowners' title to the land. Consequently, we conclude that the trial court did not err in holding that I-359's first claim was barred by the six-year statute of limitations specified by § 6-2-34(4) for breach-of-contract claims.
 II. The Final Judgment A I-359's Contentions
I-359 contends that the trial court erred in finding that the rent payable under the original lease was not based on a per-acre calculation and, on the basis of that finding, concluding that the parties' mistaken belief regarding the number of acres contained by the land when the original lease was executed was immaterial to the amount of rent payable under the original lease and, consequently, did not justify reforming the original lease to reduce the rent. I-359 also contends that the trial court erred in concluding that, because I-359 was not entitled to reformation, it likewise was not entitled to a refund of any of *Page 424 
the rent it had paid under the original lease or a recovery of any of its attorneys' fees.
The trial court's finding that the rent payable under the original lease was not based on a per-acre calculation is a factual finding based on disputed ore tenus evidence. Therefore, in reviewing it, we must presume that it is correct, and we must view the evidence relating to it in the light most favorable to the defendants. See Driver v. Hice,618 So.2d 129, 131 (Ala.Civ.App. 1993).
Viewed in the light most favorable to the defendants, the evidence relating to whether the rent payable under the original lease was based on a per-acre calculation tended to prove the following. Before the execution of the original lease, neither the landowners nor I-359 had a survey indicating the acreage of the land. During the negotiations that resulted in the original lease, both the landowners and I-359 used the tax map depicting the land as a source of information regarding the acreage of the land. The tax map indicated that the land contained 43.5 acres. On June 16, 1993, the landowners proposed an annual rent for the land of $275,000. The landowners based the $275,000 proposal on one landowner's opinion regarding the rental value of the land as a whole rather than a per-acre calculation. That proposal ultimately resulted in the following provision regarding rent in the original lease:
 "2. RENT: Tenant agrees to pay Landlords as rent the sum of Sixty Thousand and No/100 ($60,000.00) Dollars in first year payable in advance in equal monthly installments; One Hundred Twenty Thousand and No/100 ($120,000.00) Dollars in the second year; Two Hundred Fifty Thousand and No/100 ($250,000.00) Dollars in the Third Year; Two Hundred Seventy-Five Thousand and No/100 ($275,000.00) Dollars in the Fourth Year and Two Hundred Seventy-Five Thousand and No/100 ($275,000.00) Dollars in the Fifth Year. Beginning on the first day of the Sixth Lease Year, and continuing for each anniversary thereafter, said rental shall increase one and three-fourths percent (1¾%) per year over the prior year's rent."
I-359 wanted to lease the land in order to sublease it to third parties. Before they executed the original lease, both the landowners and I-359 understood that, in order to facilitate I-359's subleasing the land, the landowners and I-359 would have to enter into new leases with respect to the portions of the land that I-359 subleased. The landowners and I-359 agreed that there should be a minimum amount of rent payable under each new lease, and they agreed upon a method for calculating that amount. First, they decided that the minimum rent if all the land were subject to new leases should total $275,000 per year. Second, they agreed to divide the land into five different zones and to apportion the $275,000 rental value among the five zones. Third, they agreed to assign a portion of the acreage of the land to each of the five zones. For purposes of assigning the acreage, they used the total acreage of 43.5 acres that was indicated by the tax map. Fourth, they divided the portion of the $275,000 rental value assigned to each zone by the number of acres assigned to each zone in order to determine a per-acre rental rate for each zone.
When they executed the original lease, the landowners and I-359 attached a copy of the tax map as an exhibit to the lease and indicated on the map the location of the five zones and their annual per-acre rental rates. Paragraph 5 of the original lease stated:
 "5. ASSIGNMENT AND SUBLETTING: Tenant may, without the consent *Page 425 
of the Landlords, sublease or assign this Lease or its rights hereunder. In such event Tenant shall remain liable for the payment of all rent required to be paid hereunder and for the performance of all terms, covenants and conditions undertaken by Tenant. Landlords acknowledge that Tenant has executed this Lease with the intention of developing the demised premises for subleasing and use by third parties. In order to protect any such sublessee against potential default by Tenant under this Lease to Landlords, and to protect Landlords against the loss of such subtenant in the event of a default by Tenant hereunder, such sublessee shall execute an attornment agreement whereby it agrees that in the event Tenant shall default in its obligation to Landlords, [sublessee] will attorn to Landlords and treat them as the landlord under the sublease. Landlords will execute a nondisturbance agreement assuring the subtenant that in the event of a default by Tenant hereunder, it will not disturb such sublessee's possession so long as sublessee has not prepaid its rent more than one month in advance and so long as sublessee is not in default under the sublease. For purposes of protecting Landlords' rental income, the demised premises has been divided into zones with a separate rental amount per acre as shown on Exhibit A'. Tenant agrees that any sublease shall yield at least the minimum amounts of rentals shown on Exhibit A' for that property which is included in any particular sublease."
(Emphasis added.)
Although the original lease provided that I-359 would obtain a survey of the land within 15 days of the effective date of the original lease, it did not provide for any adjustment of the rent payable under the original lease if the survey indicated that the land contained more or less than the 43.5 acres indicated by the tax map. The survey that I-359 obtained in December 1994 indicated that the land contained 38.1 acres instead of the 43.5 acres indicated by the tax map.
After receiving the survey, I-359 requested that the landowners agree to a reduction in the rent payable under the original lease on the ground that the survey had revealed that the land contained fewer acres than the parties had believed when they executed the original lease. However, the landowners refused, citing the absence of any language in the original lease providing for an adjustment of the rent if the survey indicated that the land contained more or less acreage than the parties believed. The original lease provided that I-359 could terminate the original lease at any time during its first two years of the lease, yet I-359 did not terminate the original lease during that two-year period despite its knowledge that the land contained fewer acres than I-359 had believed it contained when I-359 executed the original lease and despite the landowners' refusal to reduce the rent payable under the original lease.
Despite its knowledge that the land contained only 38.1 acres, I-359, in October 1995, entered into an agreement with the landowners titled "First Modification to Lease Agreement," in which the parties, among other things, reaffirmed the rent provision of the original lease without modification despite the fact that the land contained fewer acres than the parties had believed it contained when they executed the original lease.
In January 1996, the parties entered into the 1996 agreement, which stated, in pertinent part:
 "WHEREAS, Landlords and Tenant entered into [the original lease] ('Lease'), a copy of which is attached *Page 426 
hereto as Exhibit `A' and made a part hereof, which covered that certain property located in Tuscaloosa County, State of Alabama, being more particularly described in the Lease ('Property'); and
 "WHEREAS, in the course of Tenant's development of the Property, Tenant will execute subleases and grant occupancy rights to third parties covering portions of the Property; and
 "WHEREAS, in order to assist the Tenant in its development of the Property, Landlords have agreed to enter into new leases ('New Leases') for portions of the Property as the Tenant may request subject to the terms and conditions set forth herein.
 "WHEREAS, as an Exhibit to the Lease, the parties divided the Property into zones and required that any New Leases covering property within those zones must yield a minimum amount of rent per acre under each New Lease."
(Emphasis added.)
As the new leases were executed, the rent payable under each new lease was determined by multiplying the actual acreage covered by that new lease, as determined by the survey I-359 had commissioned after the effective date of the original lease, by the rental rate for the zone or zones in which that acreage was located. The parties amended the original lease eight times to delete the acreage that was covered by the new leases from the original lease and to deduct the rent payable under the new leases from the rent payable under the original lease.
The foregoing evidence indicates that the rent payable under the original lease was not based on a per-acre calculation, although the parties agreed that the minimum rent payable under each new lease would be based on a per-acre calculation. Accordingly, because the evidence supports the trial court's factual finding that the rent payable under the original lease was not based on a per-acre calculation, we cannot hold that that factual finding is plainly and palpably erroneous.
Because the rent payable under the original lease was not based on a per-acre calculation, a mutual or unilateral mistake regarding the number of acres contained by the land was not material to the amount of rent that was payable under the original lease. Cf. Cobb v. Morton, 252 Ala. 598, 600,42 So.2d 450, 452 (1949). Therefore, such a mutual or unilateral mistake did not justify either reformation of the original lease to reduce the rent or a refund of a portion of the rent I-359 had paid under the original lease. Id.
Thus, the trial court did not err in denying I-359 that relief.
Although I-359 challenges two alternative rationales the trial court cited for holding that I-359 was not entitled to reformation of the original lease or a refund, we need not address those arguments because the trial court's finding that the rent payable under the original lease was not based on a per-acre calculation is a valid legal ground for its ruling.See Smith v. Equifax Servs., Inc., 537 So.2d 463, 465
(Ala. 1988) ("[An appellate court] `will affirm the judgment appealed from if supported on any valid legal ground.'"). Therefore, we affirm the trial court's final judgment insofar as it denied I-359 reformation of the original lease and a refund of a portion of the rent I-359 had paid under the original lease.
I-359 also argues that the trial court erred in denying I-359 attorneys' fees. I-359 sought to recover the attorneys' fees it had incurred in amending its complaint to add a claim seeking to compel the defendants to sign some of the new leases and the eighth amendment of the original lease and thereby rectify their alleged breach of the 1996 agreement. *Page 427 
However, the trial court denied I-359 recovery of those attorneys' fees on the ground that I-359 was not entitled to reformation of the original lease. Because the attorneys' fees I-359 sought to recover were based on its claim that the defendants had breached the 1996 agreement rather than on its claim seeking reformation of the original lease, the trial court's rationale for denying those attorneys' fees was erroneous. However, I-359 has not cited to this court any evidence in the record establishing that the defendants breached the 1996 agreement — the record establishes that the defendants executed the documents whose execution I-359 sought to compel by amending its complaint, and I-359 has not cited to this court any evidence establishing that the defendants' execution of those documents was untimely. Therefore, even though the trial court based its denial of those attorneys' fees on an erroneous rationale, we affirm that denial because it is supported by a valid legal ground. SeeSmith v. Equifax Servs., Inc.
 B. The Defendants' Contentions
The defendants contend that the trial court erred in declaring that the new leases superseded the original lease with respect to the portions of the land covered by the new leases; that the new leases were independent leases whose existence did not depend on the continued existence of the original lease; and, therefore, that I-359 would not be obligated to extend the term of the original lease as a condition precedent to extending the terms of the new leases.
In pertinent part, the 1996 agreement stated:
 "1. Within thirty (30) days after the written request of Tenant, Tenant and Landlords agree to execute New Leases on the same terms, conditions, stipulations and guaranties contained in the Lease including, without limitation, the right of first refusal contained in Section 21 of the Lease defined above, for a term consistent with the remaining term (including options) of the Lease as outlined in Sections 1 and 12 provided that Tenant complies with the following:
 "i. Tenant shall provide a legal description of the property which is the subject of the New Lease ('New Legal Description') prepared by a surveyor licensed in the State of Alabama which shall be included as the legal description of the real property which is the subject of the New Lease;
 ". . . .
 "iii. The Tenant identifies the zone(s) in which the New Legal Description is located and provides that the minimum amount of rent per acre in the New Lease yields at least the minimum amount of rent per acre required for that particular zone as more fully set out on Exhibit A to the Lease. Any minimum rent which Tenant pays to the Landlord under each New Lease shall be deducted from the minimum rent paid by the Tenant under the Lease, provided, however, that in no event shall the total minimum rent paid by the Tenant to the Landlords under the Lease and all New Leases be greater than the minimum rent which the Tenant would be obligated to pay under the Lease had Landlords and Tenant never executed any New Leases.
 "2. Simultaneous with the execution of each New Lease, Landlords and Tenant agree to amend the Lease by deleting from its legal description the New Legal Description and reducing the minimum rent by the amount of minimum rent paid under the New Lease. All other terms and conditions of the *Page 428 Lease shall remain in full force and effect, including without limitation the right of first refusal set forth in Section 21 of the Lease."
(Emphasis added.)
Each new lease described, by metes and bounds, the portion of the land that was covered by that new lease. Periodically, I-359 and the landowners entered into amendments of the original lease that deleted the portions of the land covered by the new leases from the original lease and deducted the rent payable under the new leases from the rent payable under the original lease. Eventually, the parties executed new leases that covered all but approximately 3.6 acres of the land. Most of the remaining 3.6 acres will not be subleased because they are covered with roads and, therefore, will not be the subject of new leases.
The defendants argue that, because the 1996 agreement provides that the new leases will be made "on the same terms, conditions, stipulations and guaranties contained in the [original] Lease" and that, except for deleting the land covered by the new leases from the land covered by the original lease and deleting the rent paid pursuant to the new leases from the rent payable under the original lease, "[a]ll other terms and conditions of the [original] Lease shall remain in full force and effect," I-359 must extend the original lease in order to extend the new leases. We disagree. The language cited by the defendants neither makes the existence of the new leases dependent on the existence of the original lease nor makes the extension of the original lease a condition precedent to the continued existence of the new leases.
 Conclusion
We affirm the final judgment in its entirety, affirm the partial summary judgment with respect to I-359's breach-of-contract claim, reverse the partial summary judgment with respect to I-359's breach-of-covenant claim, and remand the action to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All the judges concur.
[1] The trial court's factual finding in the final judgment that the rent payable under the original lease was not based on a per-acre calculation was tantamount to a finding that the landowners did not covenant as to the quantity of the land.Cf. Cobb v. Morton, 252 Ala. 598, 600, 42 So.2d 450,452 (1949) (holding that, when sale of land "was of gross acreage, partaking of the nature of a sale per aversionem, and that quantity was not of the essence of the contract," purchasers were not entitled to a reduction of the purchase price because the land contained less acreage than they believed). Although we believe the trial court did not err in making that finding, we cannot affirm the partial summary judgment with respect to the second claim on the basis of that finding because the defendants' summary-judgment motion did not assert as a ground that the landowners had not covenanted as to the quantity of the land. See, e.g., Liberty Nat'l Life Ins.Co. v. University of Alabama Health Servs. Found., P.C.,881 So.2d 1013, 1020 (Ala. 2003) ("[The] rule [that an appellate court will affirm a summary judgment on any valid legal ground, regardless of whether the ground was considered, or even if it was rejected, by the trial court] fails in application . . . where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant's evidence on an element of a claim or defense and therefore has not shifted the burden of producing substantial evidence in support of that element.").