Rel: June 14, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

————————————————

## CL-2023-0673

————————————————

### P.T.S. III

### v.

### S.S.

### Appeal from Lee Circuit Court
### (CV-23-23)

LEWIS, Judge.

P.T.S. III ("the stepson") appeals from an elder-abuse protection order entered by the Lee Circuit Court ("the trial court"). We affirm the trial court's order.

<u>Procedural History</u>

S.S. ("the stepmother") was married to P.S., Jr. ("P.S."), at the time of the filing of the petition. P.S. died during the pendency of this action. The stepson is the son of P.S. and the stepson of S.S.

On January 25, 2023, the stepmother, who was 70 years old, filed in the trial court a petition seeking an elder-abuse protection order against the stepson. On January 26, 2023, the trial court issued an ex parte elder-abuse protection order. On February 7, 2023, the stepson filed a motion to dissolve the ex parte order, and the trial court granted the motion on February 9, 2023. A trial was held on April 11, 2023. On April 12, 2023, the trial court entered an elder-abuse protection order against the stepson.

The elder-abuse protection order provides, in pertinent part:

"The [stepson] is enjoined from threatening to commit or committing acts of abuse, as defined in the Elder Abuse Protection Order and Enforcement Act, against the: [stepmother].

"The [stepson] is restrained and enjoined from: Harassing[,] Stalking[,] Annoying[,] Telephoning[,] Contacting: the [stepmother]; OR Threatening or engaging in conduct that would place the following in reasonable fear of bodily injury: the [stepmother].

"The [stepson] is ordered to stay away from: the [stepmother]'s residence.

"The [stepson] is removed and excluded from the residence of the [stepmother], regardless of ownership of the residence.

"The [stepson] is prohibited from transferring the funds, benefits, property, resources, belongings, or assets of the [stepmother] to any person other than the [stepmother].

"The [stepson] is restrained and enjoined from exercising control over the funds, benefits, property, resources, belongings, or assets of the [stepmother].

"The [stepson] is ordered to return custody or control of the funds, benefits, property, resources, belongings, or assets to the [stepmother].

"[The stepson] is to tender $25,000.00 to the [stepmother]'s attorney within 30 days, the court finding that [the stepson] had no ownership interest in the funds and was not acting on behalf of either of the owners of said funds when he took the funds."

(Capitalization in original.)

On May 10, 2023, the stepson filed a timely postjudgment motion for a new trial and a motion for relief from judgment pursuant to Rules 59 and 60, Ala. R. Civ. P. In his postjudgment motion, the stepson alleged that "[t]he [stepmother] offered no evidence to support that [the stepson]'s actions rise to the level of abuse to require an elder abuse protection order." Further, the stepson alleged that "[t]he law requires

3

[the stepmother] to prove by a preponderance of the evidence that [the stepson] committed acts [of] elder abuse against [the stepmother], and [the stepmother] failed to do so." The stepson requested that his postjudgment motion be set for a hearing pursuant to Rule 59(g), Ala. R. Civ. P.

On May 11, 2023, the stepmother filed a response to the stepson's postjudgment motion alleging that the stepson did not dispute any testimony or other evidence presented at the trial and requested that the trial court deny the stepson's postjudgment motion. To the extent that the postjudgment motion sought relief under Rule 59, that motion was denied by operation of law on August 8, 2023, pursuant to Rule 59.1, Ala. R. Civ. P.[1] On September 18, 2023, the stepson filed his notice of appeal to this court.

## Evidence

The sole witness at the trial was the stepmother. The following is a summary of her testimony.

---

[1]To the extent that the postjudgment motion requested relief under Rule 60(b), Ala. R. Civ. P., we note that "[A Rule 60(b) motion] does not affect the finality of a judgment or suspend its operation." Ex parte R.S.C., 853 So. 2d 228, 233-34 (Ala. Civ. App. 2002).

On March 31, 2022, the stepmother and P.S. received a statement regarding an account they held jointly with a right of survivorship ("the joint account") and discovered that $25,000 had been debited from that account. Thereafter, the stepmother and P.S. asked a bank employee to inform them who had made the withdrawal. A document provided by a bank employee indicated that the stepson had made the $25,000 withdrawal from the joint account via cashier's check. The stepmother and P.S. were designated as the account owners of the joint account and the stepson was designated as an authorized signer.[2]

The stepson had never deposited money into the joint account, and, based on the instructions of P.S., the stepson had not received any checks for the joint account. Neither the stepmother nor P.S. had given the stepson permission to withdraw $25,000 from the joint account.

---

[2]An exhibit introduced into evidence indicated that an authorized signer is an "[a]gent … [who] may make account transactions for parties but ha[s] no ownership or rights at [the account owner's] death unless named as a P.O.D. (Payable on Death) account beneficiary." See Ala. Code 1975, § 5-24-11(d) ("An agent in an account with an agency designation has no beneficial right to sums on deposit.") Here, the stepson was also listed as a P.O.D. beneficiary; however, neither of the account holders had died at the time of the withdrawal. See Ala. Code 1975, § 5-24-11(c) ("A beneficiary in an account having a POD designation has no right to sums on deposit during the lifetime of any party.")

Upon discovering that the stepson had withdrawn $25,000 from the joint account, the stepmother and P.S. telephoned the stepson. The stepson acknowledged that he had taken the $25,000 from the joint account without the permission of P.S. or the stepmother; that he knew it was not his money to withdraw; and that he would return the money. During the telephone conversation, the stepson said that he wished he had taken the entire balance of the joint account. Once the stepmother and P.S. talked to the stepson, as a safeguard, they decided to close the joint account and to open a new account. The stepson did not return the $25,000.

Approximately nine months later, on December 31, 2022, P.S., who suffered from Parkinson's Disease, was hospitalized at East Alabama Medical Center. That day, the stepmother telephoned the stepson to inform the stepson of P.S.'s hospitalization. Four days later, the stepson burst into P.S.'s hospital room; walked directly toward the stepmother; and, in a demanding manner, began yelling at the stepmother, asking where P.S.'s phone was located, and telling her to leave the hospital room.

The stepmother testified that she had been frightened because the stepson has such a "hot temper." Therefore, she walked to the nurse's

6

desk and asked the nurse to come to the hospital room. The nurse walked into the hospital room and told the stepson that he should not upset P.S. The stepson thereafter expressed to P.S. that he wanted the stepmother out of the hospital room and stated that the stepmother was a liar. The stepson pointed his finger in the stepmother's face and called her a "picture of evil" and "crazy," which prompted P.S. to attempt to get the stepson to stop. That exchange between the stepmother and the stepson upset P.S., and, a few days after the incident in the hospital room, P.S. encouraged the stepmother to file the petition for an elder-abuse protection order.

The stepmother has been fearful of the stepson because he called her names and acted aggressively towards her. She is afraid that, when the stepson's temper is triggered, he might inflict bodily harm on her. At the trial, the stepmother requested that the stepson be required to stay away from her and to reimburse her for the $25,000 that he withdrew from the joint account.

<u>Jurisdiction</u>

"Section 12-3-10, Ala. Code 1975, provides for the exclusive appellate jurisdiction of the Court of Civil Appeals:

"'The Court of Civil Appeals shall have exclusive appellate jurisdiction of <u>all civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000</u>, all appeals from administrative agencies other than the Alabama Public Service Commission, all appeals in workers' compensation cases, all appeals in domestic relations cases, including annulment, divorce, adoption, and child custody cases and all extraordinary writs arising from appeals in said cases.

"… That Code section further describes 'the amount involved' as follows:

"'<u>Where there is a recovery in the court below of any amount</u> other than costs, the amount of <u>such recovery shall be deemed to be the amount involved</u>; otherwise, the amount claimed shall be deemed to be the amount involved; except, that in actions of detinue the alternate value of the property as found by the court or jury shall be deemed to be the amount involved.'"

<u>McCullough v. Windyke Country Club, Inc.</u>, [Ms. SC-2023-0408, Aug. 11, 2023] ___ So. 3d ___, ___ (Ala. 2023).   Here, because the amount recovered, i.e., $25,000, does not exceed $50,000, this court has appellate jurisdiction.

<u>Standard of Review</u>

"'Because the [trial] court received evidence ore tenus, [appellate] review is governed by the following principles:

"'"'"'[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.'"' Water Works & Sanitary Sewer Bd. v. Parks, 977 So. 2d 440, 443 (Ala. 2007) (quoting Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005), quoting in turn Philpot v. State, 843 So. 2d 122, 125 (Ala. 2002)). '"The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment."' Waltman v. Rowell, 913 So. 2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So. 2d 77, 79 (Ala. 1985)). 'Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts.' Waltman v. Rowell, 913 So. 2d at 1086."

"'Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So. 2d 924, 929 (Ala. 2007).'"

Washington v. Johnson, [Ms. SC-2023-0464, Apr. 19, 2024] ___ So. 3d ___, ___ (Ala. 2024) (quoting Bond v. Estate of Pylant, 63 So. 3d 638, 643-44 (Ala. Civ. App. 2010)).

## Discussion

### I.

On appeal, the stepson first raises the issue of whether the trial court erred in entering the elder-abuse protection order based upon the

sufficiency of the evidence and the application of the law to the facts. The stepson argues that the evidence does not support the trial court's determination that the stepson committed elder abuse, specifically, financial exploitation, theft, abuse, or harassment.

The Elder Abuse Protection Order and Enforcement Act ("the Act"), Ala. Code 1975, § 38-9F-1 et seq., was enacted in 2017 to promote all of the following purposes:

> "(1) To maximize protection of victims of elder abuse.
>
> "(2) To create a flexible and expeditious method of obtaining a protection order against an individual who has committed elder abuse.
>
> "(3) To expand the ability of law enforcement officers to assist victims, to enforce the law effectively in cases of elder abuse, and to prevent further incidents of abuse."

§ 38-9F-2, Ala. Code 1975.

Section 38-9F-3(2) defines "elder abuse" to include "[t]he commission of [certain] acts or the intent to commit [certain acts] against an elderly person."[3]  One of the acts that meets the definition of "elder abuse" under § 38-9F-3(2) is "financial exploitation." Section 38-9F-3(2)g.

_____

[3]Section 38-9F-3(4) defines an elderly person as "[a] person 60 years of age or older." The stepmother, who was 70 years old when she filed her petition, meets that definition.

refers to Ala. Code 1975, §§ 13A-6-191 and 8-6-171 for the definition of "financial exploitation." Section 13A-6-191 defines "financial exploitation" as

> "[t]he use of deception, intimidation, undue influence, force, or threat of force to obtain or exert unauthorized control over an elderly person's property with the intent to deprive the elderly person of his or her property or the breach of a fiduciary duty to an elderly person by the person's guardian, conservator, or agent under a power of attorney which results in an unauthorized appropriation, sale, or transfer of the elderly person's property."

Section 8-6-171(5)a., Ala. Code 1975, defines "financial exploitation" to include "[t]he wrongful or unauthorized taking, withholding, appropriation, or use of money, assets, or property of a vulnerable adult." Vulnerable adult is defined by § 8-6-171(10)a., Ala. Code 1975, to include "[a] person 65 years of age or older." The stepmother, who was 70 years old when she filed her petition, meets that definition.

In this case, the trial court specifically found that the stepson "had no ownership interest in the funds and was not acting on behalf of either of the owners of said funds when he took the funds." That finding is supported by: (1) the stepmother's testimony that the stepson admitted that he withdrew the funds without the permission of the account holders and stated that he would return the money and (2) the documentation

11

from the bank indicating that the stepson was only an agent for the owners of the joint account and only had an ownership interest upon the death of both owners.

In his brief to this court, the stepson argues that the stepmother failed to prove that the stepson did not make the withdrawal on behalf of P.C. However, as noted previously, the stepmother testified that both she and P.C. had been surprised by the withdrawal and that the stepson had admitted that he had withdrawn the $25,000 without permission. Therefore, we conclude that the stepson's argument on this point is without merit.

Based on the foregoing, the trial court could have properly found that the stepson committed an unauthorized taking of the stepmother's money, see § 8-6-171(5)a., Ala. Code 1975, which constitutes "elder abuse" under the Act. Therefore, we pretermit discussion of the stepson's arguments that there was insufficient evidence that he committed other acts that constitute elder abuse under the Act.

## II.

On appeal, the stepson also raises the issue of whether the trial court erred in denying the stepson's motion for new trial by operation of

law without holding a hearing. However, "[t]he failure to hold a hearing on a posttrial motion is not always reversible error." Cunningham v. Edwards, 25 So. 3d 475, 477 (Ala. Civ. App. 2009).

> "'"[I]f a party requests a hearing on its motion for a new trial, the court must grant the request." Ex parte Evans, 875 So. 2d 297, 299-300 (Ala. 2003) (citing Rule 59(g), Ala. R. Civ. P., and Walls v. Bank of Prattville, 554 So. 2d 381, 382 (Ala. 1989)). Although it is error for the trial court not to grant such a hearing, this error is not necessarily reversible error. "This Court has established, however, that the denial of a postjudgment motion without a hearing thereon is harmless error, where (1) there is ... no probable merit in the grounds asserted in the motion, or (2) the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court." Historic Blakely Auth. v. Williams, 675 So. 2d 350, 352 (Ala. 1995) (citing Greene v. Thompson, 554 So. 2d 376 (Ala. 1989)).'"

Id. (quoting Chism v. Jefferson Cnty., 954 So. 2d 1058, 1086 (Ala. 2006)).

As he did on appeal, in his postjudgment motion, the stepson asserted that the stepmother failed to prove that the stepson had committed "elder abuse" under the Act. We have already concluded that the stepson's argument that he did not commit financial exploitation is without merit. Because there was "no probable merit in the grounds asserted in the [stepson's postjudgment] motion," the trial court's failure

to hold a hearing on the postjudgment motion was harmless error.  <u>See</u> <u>id.</u>

<u>Conclusion</u>

Based on the foregoing, the trial court's elder-abuse protection order is affirmed.

AFFIRMED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.