BRYAN, Judge.
 

 Following the removal of the administration of the estate of Kenneth Pylant II, deceased (“Pylant”), from the Probate Court of Lee County (“the probate court”) to the Lee Circuit Court (“the circuit court”), the circuit court entered a judgment that, among other things, determined who was entitled to certain land in Lee County (“the disputed land”) and whether Pylant’s estate was responsible for paying certain debts Pylant and his widow, Kim Bond (“Kim”), owed at his death. In appeal no. 2090406, Katie Bond (“Katie”), a minor, who is one of three children Pylant and Kim had together, appeals the circuit court’s judgment insofar as it determined who was entitled to the disputed land. In appeal no. 2090422, Kim appeals the circuit court’s judgment insofar as it determined
 
 *640
 
 who was entitled to the disputed land and whether the estate was responsible for debts Pylant and she owed at his death. Pylant’s former wife, Bethany Pylant (“Bethany”), cross-appeals insofar as the circuit court’s judgment determined who was entitled to the disputed land. We affirm in part, reverse in part, and remand.
 

 The following facts are undisputed. Py-lant and Bethany married in 1981 and had four sons together, Kenneth Pylant III (“Ken”), who was born in 1982; Adam Pylant (“Adam”), who was born in 1985; Blake Pylant (“Blake”), who was born in 1991; and Will Pylant (“Will”), who was born in 1992.
 

 During the marriage between Pylant and Bethany, Pylant acquired title in his name only to a 15-acre parcel of land in Lee County (“the 15-acre parcel”). Also during the marriage between Pylant and Bethany, Pylant and Bethany acquired title as joint tenants with right of survivor-ship to a 71.73-acre parcel of land in Lee County (“the 71.73-acre parcel”). The disputed land consists of the 15-acre parcel and the 71.73-acre parcel. Both the 15-acre parcel and the 71.73-acre parcel abut the western right-of-way of Cox Road; the southern boundary of the 15-acre parcel and the northern boundary of the 71.73-acre parcel are coterminous. A blue house with a street address of 1990 Cox Road is located on the 15-acre parcel. A house with a street address of 2010 Cox Road is located on the 71.73-acre parcel.
 

 On December 27, 1993, Pylant and Bethany signed a separation agreement (“the separation agreement”). In pertinent part, the separation agreement stated:
 

 “1. [Bethany] shall be vested with all the right, title and interest, in and to the home located at 2010 Cox Road, Auburn, Alabama and the surrounding approximately four (4) acres, the pool house and pool. A diagram with approximate lines of division is attached hereto as Exhibit ‘A’. In addition to the home and four (4) acres, [Bethany] shall have all the right, title and interest in and to twenty two (22) acres, for a total of twenty six (26) acres, more or less.
 

 “2. [Pylant] shall have all the right, title and interest in and to the remainder of the land, which is 60.71 acres, more or less.1
 
 [1]
 
 3
 

 “3.[Pylant] shall have all the right, title and interest in and to 1990 Cox Road, which is a blue house situated on approximately fifteen (15) acres!
 
 [2]
 
 1
 

 “15. [Bethany], at the time of this divorce, will obtain ownership to a coastal hayfield located around the home. [Bethany] shall be obligated to continue to lease this coastal field to [Pylant] at the fair market value. The parties agree that the fair market value as of September, 1993, is $20.00 per acre, per year. [Bethany] shall be obligated to continue to lease this field to [Pylant] as long as he desires to continue the lease at the fair market value, provided it has been properly maintained with fencing, fertilizer and maintenance at [Pylant’s] expense.
 

 “23. Each party agrees to execute whatever documents are necessary to
 
 *641
 
 effect this agreement or the related conveyances. This would include, but not be limited to, deeds....
 

 “31. Each of the parties shall on demand execute and deliver to the other any deeds ... to effectuate the provisions and purposes of this agreement. ...”
 

 On January 26, 1994, the circuit court entered a judgment divorcing Pylant and Bethany and incorporating the settlement agreement. The deeds contemplated by the settlement agreement with respect to the 71.73-acre parcel and the 15-acre parcel were never executed.
 

 In June 1994, Pylant and Bethany executed a note payable to Auburn University Federal Credit Union (“Auburn Credit Union”) in the principal amount of $35,000 and secured its payment by executing a mortgage on a 3-acre portion of the 26 acres allocated to Bethany by the settlement agreement.
 

 After his January 26, 1994, divorce from Bethany, Pylant and Kim had three children together. Their eldest child, Katie, was born in September 1994. Pylant and Kim ceremonially married on April 30, 2004.
 

 In 1996, Pylant and Kim executed a note payable to AuburnBank in the principal amount of $57,500 and secured its payment by executing a mortgage on a parcel of land located on North Ryan Street in Auburn, which they owned as joint tenants with right of survivorship. In 2002, Pylant and Kim executed a note payable to Union Bank in the principal amount of $96,000 and secured its payment by executing a mortgage on 20 acres of land that was titled in Kim’s name only. In 2004, Pylant and Kim executed a note payable to Au-burnBank in the principal amount of $675,550.20 and secured its payment by executing a mortgage on land located on Pirates Cove in Tallassee, which they owned as joint tenants with right of surviv-orship.
 

 Pylant executed a will (“the will”) on March 19, 2001. On December 16, 2004, Pylant and Kim signed a written agreement stating, in pertinent part, that “it is agreed that if either spouse dies, all mortgages and debts of both parties will be paid in full by the estate of the deceased spouse and become the property of the surviving spouse.” They each signed that agreement in the presence of a single witness.
 

 On September 5, 2005, Pylant was killed in a motorcycle accident. After Pylant died, the original of the will could not be found. However, the executor named in the will petitioned the probate court to admit a copy of the will to probate. Following a hearing, the probate court admitted the copy of the will to probate on November 19, 2005. Thereafter, Kim attempted to contest the will, but her will contest was dismissed due to her failure to comply with the statutes governing will contests. She appealed to the supreme court, which affirmed the dismissal of her will contest.
 
 See Bond v. Pylant,
 
 3 So.3d 852 (Ala.2008).
 

 In pertinent part, the will provides:
 

 “ARTICLE I
 

 “I desire that all my just debts, including the expense of my last illness, be paid by my Executor, hereinafter named, as soon after my death as may be practicable.
 

 “ARTICLE II
 

 “(H) I direct that my Executor divide the eighty-eight (88) acres (approximately) that I own in Lee County,[
 
 3
 
 ] Alabama as follows:
 

 
 *642
 
 “(1) I give, devise and bequeath ten (10) acres that adjoins Artie Bond’s property and/or [Kim’s] to [Kim and Katie] in equal shares/
 
 [4]
 
 1
 

 “(2) The remaining seventy-eight (78) acres (approximate) I give, devise and bequeath to my children Ken Pylant, Adam Pylant, Blake Pylant and Will Py-lant in equal shares. This seventy-eight (78) acres and rental home are located at 1990 Cox Road, Auburn, Alabama.”[
 
 5
 
 ]
 

 In January 2009, pursuant to a petition filed by the executor, the administration of Pylant’s estate was removed from the probate court to the circuit court. In the circuit court, the parties delineated the following issues for determination by the circuit court: (1) whether the separation agreement was unenforceable because Bethany had been fraudulently induced to sign it; (2) whether the separation agreement, which was incorporated into the January 26, 1994, judgment divorcing Pylant and Bethany, terminated their joint tenancy with right of survivorship with respect to the 71.73-acre parcel and vested Bethany with exclusive title to 26 acres of that parcel, vested Pylant with exclusive title to 45.73 acres of that parcel, and vested Py-lant with exclusive title to the 15-acre parcel; (3) whether Bethany and Pylant established a common-law marriage after their January 26,1994, divorce; (4) whether the estate was responsible for paying the debt owed jointly by Pylant and Bethany to Auburn Credit Union; and (5) whether the estate was responsible for paying the debts owed jointly by Pylant and Kim to AuburnBank and Union Bank. For the purposes of determining the last two issues, the parties stipulated that the land securing the payment of the debt jointly owed by Pylant and Bethany and the land securing the payment of the debt jointly owed by Pylant and Kim were not part of Pylant’s probate estate.
 

 Following a bench trial at which it received evidence ore tenus, the circuit court, on October 27, 2009, entered a judgment stating, in pertinent part:
 

 “[T]he Court finds that a valid and binding order was entered on or about January 26, 1994 divorcing [Pylant] and [Bethany]. Additionally, no common-law marriage was established after that date between [Pylant] and [Bethany]. Moreover, the Court finds that the will at issue in this case is also valid.
 

 “Regarding the approximately 86-acre parcel of farm property in Auburn at issue in this case — including two residences, pastime, and a hay field[
 
 6
 
 ] — the Court finds that [Bethany] and [Pylant] were tenants-in-common for the entire parcel. The divorce agreement clearly intends to sever any rights of survivor-ship between [Bethany] and [Pylant]. See, e.g.
 
 Hamilton v. Matthews,
 
 619 So.2d 1385 (Ala.1993) and
 
 Kirven v. Reynolds,
 
 536 So.2d 936 (Ala.1988). Moreover, the evidence at trial was that the parties already used the land as if it were legally subdivided. [Bethany] resided in one of the houses on the property [
 
 7
 
 ] and used a hayfield immediately
 
 *643
 
 adjacent as her own, but did not enter the second home[
 
 8
 
 ] or the attached pastureland. [Kim] and [Pylant] used the pasture land, the barn, and the rental house[
 
 9
 
 ] but did not enter the hayfield or [Bethany’s] residence[
 
 10
 
 ] without [Bethany’s] permission. In fact, there was testimony that [Pylant] and [Kim] rented use of the hayfield from [Bethany]. This is distinguishable from the facts of
 
 Malone v. Malone,
 
 543 So.2d 1188 (Ala.Civ.App.1987), cited by [Bethany’s] attorney. In the
 
 Malone
 
 case, one of the ex-spouses died the year following the divorce agreement and no pattern of usage was established for the real property.
 

 “However, the divorce agreement in itself cannot subdivide the land, and no deeds have been recorded subdividing the land. Also, any ruling that the right of survivorship was not destroyed would disinherit the Pylant children, which would not be equitable, therefore, the 86-acre parcel is disposed as follows: [Bethany] holds 50% undivided'interest as tenant-in-common with Kenneth D. Pylant, III; Adam Pylant; Blake Py-lant; and Will Pylant, each of whom hold a 12.5% undivided interest.
 

 “Various parcels of land owned by [Pylant] during his life passed via sur-vivorship deeds to [Kim] and [Bethany], Several theories were put forward by the parties as to which entity should pay the notes for mortgages on those properties. No Alabama case law appears to be on point for this issue, but the Court finds the Tennessee case
 
 In re: Estate of George C. Vincent
 
 persuasive. 98 S.W.3d 146 (Tenn.2003). Therefore, the Estate shall not be responsible to pay notes for mortgages which passed outside of probate in this case. The notes for said mortgages shall remain in the names of the parties still living who signed the notes.”
 

 On November 25, 2009, Kim moved the circuit court to alter, amend, or vacate its judgment. Among other things, Kim’s motion challenged (1) the circuit court’s conclusion that the divorce did not vest Pylant with sole title to 45.73 acres of the 71.73-acre parcel and the 15-acre parcel and (2) the circuit court’s conclusion that the estate was not responsible for paying any portion of the debts Pylant and Kim jointly owed AuburnBank and Union Bank.
 

 The circuit court denied Kim’s motion on December 2, 2009. On January 5, 2010, Kim appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), AIa.Code 1975. On January 11, 2010, Katie, by and through her guardian ad litem,
 
 [11]
 
 appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6). On January 15, 2010, Bethany cross-appealed to the supreme court, which transferred the cross-appeal to this court pursuant to § 12-2-7(6). This court consolidated the appeals.
 

 Because the circuit court received evidence ore tenus, our review is governed by the following principles:
 

 “ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed
 
 *644
 
 facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’
 
 Water Works & Sanitary Sewer Bd. v. Parks,
 
 977 So.2d 440, 443 (Ala.2007) (quoting
 
 Fadalla v. Fadalla,
 
 929 So.2d 429, 433 (Ala.2005), quoting in turn
 
 Philpot v. State,
 
 843 So.2d 122, 125 (Ala.2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’
 
 Wattman v. Rowell,
 
 913 So.2d 1083, 1086 (Ala.2005) (quoting
 
 Dennis v. Dobbs,
 
 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’
 
 Wattman v. Rowell,
 
 913 So.2d at 1086.”
 

 Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.,
 
 985 So.2d 924, 929 (Ala.2007).
 

 Initially, we note that Bethany does not argue in her brief to this court three issues she raised in the circuit court: (1) whether the separation agreement was not enforceable because, she said, she was induced to sign it by fraud; (2) whether she and Pylant had established a common-law marriage after their December 26, 1994, divorce; and (3) whether the estate is responsible for the debt she and Pylant jointly owed Auburn Credit Union when he died. Therefore, she has waived those issues.
 
 See Tucker v. Cullman-Jefferson Counties Gas Dist.,
 
 864 So.2d 317, 319 (Ala.2003) (“ ‘When an appellant fails to properly argue an issue, that issue is waived and will not be considered.
 
 Boshell v. Keith,
 
 418 So.2d 89 (Ala.1982).’
 
 Asam v. Devereaux,
 
 686 So.2d 1222, 1224 (Ala.Civ.App.1996).”).
 

 The first issue we must decide is what, if any, effect the separation agreement and the January 26, 1994, divorce judgment incorporating it had on the ownership of the 71.73-acre parcel and the 15-acre parcel. Kim argues that the separation agreement was binding on Bethany and Pylant and that it vested Bethany with exclusive title to 26 acres of the 71.73-acre parcel, vested Pylant with exclusive title to the other 45.73 acres of the 71.73-acre parcel, and vested Pylant with exclusive title to the 15-acre parcel. Bethany, on the other hand, argues that the separation agreement and the divorce judgment incorporating it neither terminated her and Pylant’s joint tenancy with right of surviv-orship with respect to the 71.73-acre parcel nor divided the 71.73-acre parcel and the 15-acre parcel between her and Py-lant. Rather, Bethany argues, the separation agreement was a contract that required the execution of deeds in order to effectuate its provisions dividing the 71.73-acre parcel and the 15-acre parcel and, thus, because the parties did not execute such deeds within a reasonable time, the provisions of the separation agreement are not enforceable. She also argues that enforcing the separation agreement would constitute an impermissible amendment of a marital-property division more than 30 days after the entry of the judgment dividing the marital property. Thus, according to Bethany, because the separation agreement and the divorce judgment incorporating it did not terminate the joint tenancy with right of survivorship with respect to the 71.73-acre parcel, exclusive title to the 71.73-acre parcel passed to her upon Py-lant’s death, by virtue of her right of sur-vivorship.
 

 The supreme court’s decision in
 
 Newton v. Roe,
 
 290 Ala. 191, 275 So.2d 135 (1973), indicates that the separation agreement was enforceable despite the fact that Py-lant and Bethany did not execute deeds to
 
 *645
 
 effectuate the division of the 71.73-acre parcel and the 15-acre parcel provided for in the separation agreement.
 
 Newton
 
 further indicates that enforcement of the separation agreement would not constitute an impermissible amendment of a marital-property division more than 30 days after the entry of the judgment dividing the marital property.
 

 In
 
 Newton,
 
 Ernest Edward Roe (“Ernest”) and Mary Frances Roe (“Mary”) signed a property-settlement agreement as part of their divorce, although the settlement agreement was not incorporated into their divorce judgment. The property-settlement agreement provided that Mary would receive exclusive title to the land on which their house was located and that Ernest would receive exclusive title to a 79-acre parcel of land (“the 79-acre parcel”). However, Mary never executed a deed conveying her interest in the 79-acre parcel to Ernest. Subsequently, Mary sued Ernest, seeking a sale for division with respect to the 79-acre parcel. The trial court denied Mary’s claim seeking a sale for division and declared that Ernest was vested with exclusive title to the 79-acre parcel. Mary then appealed to the supreme court. Affirming the judgment of the trial court, the supreme court stated:
 

 “We are unable to agree with [Mary’s] contention that the final decree rendered by the trial court constitutes a revision or amendment of a prior decree. The language of the instant decree certainly does not purport to alter a prior decree in any way and we find no basis in law or fact to so construe said decree.
 

 “It is also well established that, when a court of equity is presented with such facts as warrant, it is fully justified to regard substance rather than form and treat as done that which ought to have been done, if such is necessary to effectuate the true intent of the parties.
 
 Coley v. W.P. Brown & Sons Lumber Co.,
 
 251 Ala. 235, 37 So.2d 125 [ (1948) ];
 
 St. Clair Springs Hotel Co. v. Balcomb,
 
 215 Ala. 12, 108 So. 858 [ (1926) ];
 
 Hughes & Tidwell Supply Co. v. Carr,
 
 203 Ala. 469, 83 So. 472 [ (1919) ]. In
 
 Copeland v. Warren,
 
 214 Ala. 150, 107 So. 94 [ (1926) ], the parties had attempted to execute a conveyance of property but the deed contained an incorrect description of the property to be conveyed. In holding the deed valid and allowing a reformation of the description in the deed the Court stated:
 

 “ ‘A court of equity treats as done that which ought to have been done to carry into effect the intention of the parties, and to that end will give effect to the transaction by fixing the status and rights of the parties
 
 as if the deed was executed on the date it should have been executed.’
 
 [Emphasis supplied.]
 

 “Applying the above stated equitable principles to the present case, we feel the evidence justified the trial court’s conclusion that at the time of the divorce settlement it was intended by the parties that [Ernest] would be the exclusive owner of the 79-acre tract, and that such intention should be effectuated through this litigation. Indeed, [Mary’s] evidence, including her own testimony, fails to dispute that such were the terms of the agreement. Although [Mary] does not deny that such an understanding was reached between the parties, she nevertheless insists that since the same was not included in the final decree of divorce, and that no deed conveying her interest was ever executed, it is not now binding on her; and, consequently, she remains the owner of an undivided one-half interest in the property.
 

 
 *646
 
 “We
 
 agree
 
 with the trial court’s rejection of [Mary’s] contention; and we hold that the trial court did not exceed its jurisdiction in adjudicating the rights of the parties by divesting title out of [Mary] and [vesting title] in [Ernest] in accordance with the complete settlement agreement disclosed by the testimony as if she had executed the deed on the date of the property settlement incident to their divorce. Accordingly, the judgment of the trial court is due to be and is hereby affirmed.”
 

 290 Ala. at 193-94, 275 So.2d at 137-38.
 

 In the case now before us, the separation agreement established that Bethany and Pylant intended to vest exclusive title to 26 acres of the 71.73-acre parcel in Bethany, to vest exclusive title to the other 45.73 acres of the 71.73-acre parcel in Pylant, and to vest exclusive title to the 15-acre parcel in Pylant. Accordingly, following the holding in
 
 Newton,
 
 we conclude that the settlement agreement vested exclusive title to 26 acres of the 71.73-acre parcel in Bethany, vested exclusive title to the other 45.73 acres of the 71.73-acre parcel in Pylant, and vested exclusive title to the 15-acre parcel in Pylant. Because we conclude that the separation agreement vested exclusive title to 26 acres of the 71.73-acre parcel in Bethany and vested exclusive title to the other 45.73 acres of the 71.73-acre parcel in Pylant, we find no merit in Bethany’s argument that the separation agreement did not terminate the joint tenancy with right of survivorship with respect to the 71.73-acre parcel.
 
 Cf. Jones v. Shannon,
 
 40 So.3d 717 (Ala.Civ.App.2009) (holding that divorce judgment, which incorporated a separation agreement that provided for the sale of marital property the husband and the wife owned as joint tenants with right of survivorship and division of the proceeds of the sale, established that the husband and the wife intended to terminate the joint tenancy with right of survivorship). Accordingly, we reverse the judgment of the circuit court insofar as it concluded that the separation agreement did not divide the 71.72-acre parcel and the 15-acre parcel between Pylant and Bethany before Pylant’s death.
 

 The next issue we must decide is who was entitled to Pylant’s 45.73-acre portion of the 71.73-acre parcel and the 15-acre parcel. They were part of Py-lant’s probate estate and were devised by the will. The will devised 10 acres of Pylant’s 45.73-acre portion of the 71.73-acre parcel to Kim and Katie. The will devised (1) the other 35.73 acres of Py-lant’s 45.73-acre portion of the 71.73-acre parcel and (2) the 15-acre parcel to Ken, Adam, Blake, and Will in equal shares. Consequently, we reverse the judgment of the circuit court insofar as it concluded that Bethany was entitled to an undivided one-half interest in the 71.73-acre parcel and the 15-acre parcel and that Ken, Adam, Blake, and Will were each entitled to an undivided one-eighth interest in the 71.73-acre parcel and the 15-acre parcel, and we remand the action to the circuit court for further proceedings consistent with this opinion.
 

 The third and final issue we must decide is whether the estate was responsible for paying the debts jointly owed by Pylant and Kim to AuburnBank and Union Bank at the time of Pylant’s death. Those debts were secured by mortgages on land that passed to Kim by right of survivor-ship. In arguing that the estate is responsible for paying debts of Pylant that were secured by mortgages on land, Kim is seeking to invoke the doctrine of exoneration.
 

 “The doctrine of exoneration originated in English common law. English cases from the early eighteenth century
 
 *647
 
 demonstrate that an heir or devisee of real property could look to a decedent’s personal estate to satisfy any mortgage debt remaining on a decedent’s probate property. The doctrine of exoneration stems from the broad English common law rule that all debts of the deceased were to be paid from his personal estate. Moreover, English common law held real property in high regard. Not surprisingly, English common law provided for exoneration from the personal estate of a decedent, rather than from the real property itself.”
 

 Thomas E. Clary III,
 
 Property
 
 — In re Estate of Vincent:
 
 The Tennessee Supreme Court Declines to Extend the Common Law Doctrine of Exoneration to Survivor-ship Property,
 
 34 U. Mem. L.Rev. 695, 697-98 (2004) (footnotes omitted). However, “[o]ver time, many United States jurisdictions found disfavor with the doctrine of exoneration and enacted statutes abrogating the doctrine in favor of a rule that allowed for exoneration of real property only when expressly called for by the testator.”
 
 Id.
 
 at 700. Alabama is one of those jurisdictions.
 
 See
 
 § 43-8-228, Ala. Code 1975. Section 43-8-228 provides: “A specific devise passes subject to any mortgage interest existing at the date of death, without right of exoneration, regardless of a general directive in the will to pay debts.” Thus, in the case now before us, Pylant’s general directive in his will to pay his debts did not entitle Kim to exoneration. Kim argues that the agreement she and Pylant signed on December 16, 2004, in which they agreed “that if either spouse dies, all mortgages and debts of both parties will be paid in full by the estate of the deceased spouse and become the property of the surviving spouse” should be considered as parol evidence explaining Pylant’s intent with respect to exoneration. However, Pylant’s general directive in the will to pay his debts is not ambiguous — it unambiguously omits any provision for exoneration. “We must take the terms which the testator used in the will and parol evidence is never admissible to show terms the testator intended to use and did not use.”
 
 Azar v. Azar,
 
 262 Ala. 547, 550, 80 So.2d 277, 280 (1955). Accordingly, the circuit court did not err in concluding that Kim was not entitled to exoneration.
 

 In summary, we reverse the judgment of the circuit court insofar as it concluded that the separation agreement did not divide the 71.73-acre parcel and the 15-acre parcel between Pylant and Bethany before Pylant’s death; we reverse the judgment insofar as it concluded that Bethany was entitled to an undivided one-half interest in the 71.73-acre parcel and the 15-acre parcel and that Ken, Adam, Blake, and Will were each entitled to an undivided one-eighth interest in the 71.73-acre parcel and the 15-acre parcel; we affirm the judgment of the circuit court in all other respects; and we remand the action to the circuit court for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Pylant's attorney drafted the separation agreement based on information provided by Pylant. The 26 acres referred to in paragraph 1 of the separation agreement were part of the 71.73-acre parcel. It appears that the phrase "the rest of the land” in paragraph 2 was intended to refer to the rest of the 71.73-acre parcel. If so, "the rest of the land” referred to in paragraph 2 contained 45.73 acres rather than 60.71 acres.
 

 [2]
 

 . Paragraph 3 refers to the 15-acre parcel.
 

 [3]
 

 . The 71.73-acre parcel and the 15-acre parcel contain a total of 86.73 acres.
 

 [4]
 

 . Kim owns a parcel of land with a street address of 2384 Cox Road, which abuts the 71.73-acre parcel.
 

 [5]
 

 . Subtracting the 10 acres devised to Kim and Katie in paragraph (1) from the 71.73-acre parcel would leave 61.73 acres in the 71.73-acre parcel. Those 61.73 acres plus the 15 acres in the 15-acre parcel would equal 76.73 acres.
 

 [6]
 

 . The “approximately 86-acre parcel of farm property in Auburn at issue in this case— including two residences, pasture, and a hay field” refers to the 71.73-acre parcel and the 15-acre parcel.
 

 [7]
 

 . The house with a street address of 2010 Cox Road.
 

 [8]
 

 . The blue house with a street address of 1990 Cox Road.
 

 [9]
 

 . The blue house with a street address of 1990 Cox Road.
 

 [10]
 

 . The house with a street address of 2010 Cox Road.
 

 [11]
 

 .The notice of appeal named the appellant as "Guardian ad Litem to Kim Bond’s children”; however, the appellant’s brief filed in that appeal presented argument on behalf of Katie only.