Rel: April 19, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

———————————

### SC-2023-0464

———————————

## Kim J. Washington and Katrina J. Williams

### v.

## Elrick Earl Johnson

### Appeal from Baldwin Circuit Court
### (CV-22-900835)

SHAW, Justice.

The sibling plaintiffs below, Kim J. Washington and Katrina J.

Williams ("the plaintiffs"), appeal from the judgment as a matter of law

entered by the Baldwin Circuit Court in favor of the defendant, their brother Elrick Earl Johnson ("Johnson"), in their action seeking to partition jointly owned real property. The real property at issue in this case is indisputably "heirs property" subject to partition under the mandatory application of the Alabama Uniform Partition of Heirs Property Act ("the Heirs Act"), § 35-6A-1 et seq., Ala. Code 1975. See § 35-6A-2(5), Ala. Code 1975 (defining "heirs property"), and § 35-6A-3(a)-(b), Ala. Code 1975 (explaining the mandatory application of the Heirs Act "to partition actions filed on or after January 1, 2015," that involve "heirs property"). Applying the Heirs Act, we affirm in part, reverse in part, and remand.

<u>Facts and Procedural History</u>

In August 2022, the plaintiffs filed in the trial court a "Complaint for Partition of Real Property by Sale and Division of Proceeds" against Johnson. The complaint identified the real property at issue as jointly held "heirs' property" comprising 2.8 unimproved acres located in Fairhope ("the property"), which the plaintiffs proposed to sell -- a plan to which, they said, Johnson would not agree. The complaint further alleged that the property was "incapable of being equally and equitably

2

partitioned in kind."  Thus, the plaintiffs requested that the trial court order the property sold and divide the proceeds among the parties in accordance with their respective ownership interests.  In his subsequent answer, Johnson essentially admitted the basic facts underlying the parties' disagreement but disputed that the property was not subject to partition in kind.

Although the record is silent as to whether there was compliance with the various pretrial procedural requirements of the Heirs Act,[1] on March 22, 2023, the trial court conducted a bench trial on the matter. During that proceeding, Washington was the sole witness for the plaintiffs.  She confirmed that the plaintiffs were "asking the Court to order that the property be sold and the [sale] proceeds be divided equally" among the parties.  Washington indicated that she and Williams had previously met and corresponded with Johnson in an effort to "work out a fair split of the property" but that Johnson had declined to sell and instead had expressed a desire to keep the property.  During Washington's testimony, the plaintiffs admitted into evidence a survey of the property as well as an accompanying appraisal valuing the property

---

[1]See, e.g., §§ 35-6A-6 and 35-6A-7(e)-(f), Ala. Code 1975.

at $258,000 and determining that its highest and best use was for residential purposes.

When asked to explain to the trial court why she desired to sell the property, Washington indicated that she is approaching retirement and that both she and Williams, who Washington described as disabled, could use the money that the sale of the property would provide. She further explained that the property had been vacant since her father's death in 2012, that the plaintiffs' children had no interest in returning to the property, and that the parties were "paying taxes every year on it." More specifically, according to Washington, she had been personally responsible for ensuring that the annual taxes totaling approximately $400 on the property were paid and had often paid both her one-third of the tax bill as well as Johnson's one-third. Washington further testified that Johnson had neither offered to purchase her interest in the property nor proposed a way to equitably divide the property among the parties.

Washington opined that it would be impossible to divide the essentially L-shaped property to ensure that each sibling received "a fair piece." She attributed this to the fact that only an 87-foot-wide portion along the front of the property had road access and explained that "the

4

back two lots" do not have an alternate means of road access. When asked whether she had explored the possibility of first dividing the property and then selling it in subdivided parcels, Washington testified that she had done so and had learned the following in response to her inquiries:

> "[B]ecause the land is locked on the back, it would be very difficult. I would have to go through the City, there was something about egresses and ingresses or getting the neighbors and having to put a driveway all the way back. It just seems that the back property would be too difficult to sell separately from the front piece."

Thus, Washington stated that, in her opinion, the property was worth more as a whole than as three individual parcels. Finally, Washington denied being aware of any purported sentimental attachment to the property by any of its owners and also noted that Johnson neither lived on the property nor used it for any business purpose.

During cross-examination, Washington confirmed that there was no residence on the property. She did note that Johnson lives directly across the street from the property and voluntarily mowed and maintained the property. Washington also explained that she and her siblings had not, since receiving the property from their mother in 2013,

5

entered into any type of written agreement regarding the property's upkeep, the payment of the annual taxes on the property, or the future disposition of the property.

Washington further noted that she believed the $258,000 appraisal value represented a fair price for the property. When asked what evidence she possessed suggesting that, were the property partitioned in kind, her portion would be worth less than one-third of that appraised value, Washington reiterated her belief "that the back lots would be less because they're landlocked." Upon being presented with the possibility of creating a 30-foot right-of-way on the property to provide access from the road frontage to the rear of the property, Washington expressed her lack of qualification to say whether that was a viable option for equitably dividing the property into three lots. She did note that the property possessed no natural impediments to the creation of such a right-of-way and conceded that, while potentially "costly," that solution was "probably possible." Washington also conceded that, were that to occur, she possessed no evidence to suggest that she would be unable to sell her resulting one-third portion of the property and receive as much as she would if the property was sold as a whole and she received one-third of

6

the sales price. Finally, Washington agreed that the property had "been in [their] family for a long period of time." She also admitted that Johnson had previously informed her that he did not want the property sold because he wanted it to remain in the family. Washington also agreed that the impetus behind the lawsuit was her desire for the money she would receive from the requested sale and that, if the property was, instead, partitioned in kind, she and Williams could, in fact, sell their parcels.

On redirect, Washington acknowledged that during trial was the first time she had been presented with the possibility of creating a right-of-way as a means of providing access to the rear of property if it were partitioned in kind. Washington expressed fear that she would be financially responsible for that process. She also noted that she remained unclear about which of the three owners would be entitled to the parcel with road frontage and the existing driveway. Washington further explained that, despite the absence of a written agreement regarding the upkeep and taxes, she had historically paid Johnson's portion, because, she said, he felt that mowing the grass on the property throughout the year was his contribution.

Upon the conclusion of the plaintiffs' case, Johnson testified. He confirmed that he lived directly across from the property, which, he said, had been in his family for 40 or 50 years. He indicated that, as a result, the property held sentimental value for him because "[he was] raised [on the property] and … [had] been working on that property all [his] life." Johnson indicated that he did not want the property sold because he wanted it to remain within the family.

Johnson also testified that the parties had no written agreement regarding managing the property but stated that, when the taxes came due annually, "each one of [them paid] it." He acknowledged that he did not contribute to the property taxes every year but, instead, indicated that he has "always" done "everything" necessary with regard to the actual maintenance of the property. Despite the plaintiffs' appraisal, Johnson testified that he felt the property was worth closer to $300,000. He noted, however, that he had never obtained his own appraisal of the property either as a whole or as three individual parcels. Johnson further indicated that there had been no discussion among the parties about "buy[ing] each other's interest out."

When asked whether, despite Washington's representations as to the inability to equitably divide the property, he had a proposal to accomplish a fair partition in kind, Johnson demonstrated on a map of the property where separate lots could be located and where an easement or right-of-way for road access could be placed. He further testified that the property was "nice and level" with only a slight slope in the back and that there was sufficient room to create the easement he proposed. Johnson's testimony suggested that, were his plan implemented, he desired to take the resulting lot fronting the roadway and said that Washington and Williams could receive "the back two lots and everybody'll have access to get to it." He noted that a survey would be necessary to divide the property into three equal lots comprising "[a]lmost an acre" each, but he indicated that he had no idea whether his proposed division would affect the plaintiffs' ability to sell their lots. When asked, on cross-examination, why he did not simply purchase the plaintiffs' interests in the property, Johnson said that "if [he] had the money he would," but he again denied that it was necessary that the property be sold. Upon the conclusion of his testimony, Johnson rested his case.

At that time, the plaintiffs "request[ed] that the [trial court] enter an order that the property be listed for sale on the open market and that the proceeds be distributed amongst [the parties]." Johnson responded with his own oral motion for a judgment as a matter of law on the ground that the plaintiffs had allegedly "failed to meet their burden of proof to show [the property] cannot be equitably divided." In support, Johnson emphasized his sentimental attachment to the property and its proximity to his own home. He also pointed out the lack of evidence indicating that a partition in kind would result in proceeds for the plaintiffs materially less than if the property was sold in its entirety.

Thereafter, the trial court granted Johnson's motion for a judgment as a matter of law. In that judgment, the trial court found that the property qualified as heirs property derived from the parties' mother and that each party was a one-third owner. It further held, in pertinent part:

"… The Plaintiffs never had a survey conducted on the property, nor produced an expert witness who could state the property could not be equally and equitably divided. … Washington only stated, based on personal opinion, the parcels would be less valuable if divided into one-third portions rather than as a whole. Other than her testimony, [the] Plaintiffs offered no expert opinion as to whether or not a partition would reduce the value.

"….

"… If a joint owner is unable to demonstrate that the real property cannot be equitably divided among the joint owners, the property must be partitioned and not sold. … The party seeking the sale for division has the burden of proving that the property cannot be equitably divided between the joint owners. … The Plaintiffs failed to meet their burden of proof.

"… After considering the factors listed in Ala. Code § 35-6A-9(a), the Court is of the opinion the property is not due to be sold. The Plaintiffs produced no survey nor provided any expert witness who could state the property could not be practically divided or the parcels, if sold separately, would have less value than if it were sold as a whole. The Plaintiffs also testified they have no knowledge of the process of subdividing the property or setback regulations with the City of Fairhope.

"… Further, the evidence presented proved the property was in the family for decades and held sentimental value to Johnson for that reason. Johnson presented evidence which also proved he solely contributed to all maintenance on the property. Johnson provided a proposed division of the property in Court which would allow each co-tenant access to the public road and a fair division of the property for each co-tenant. Johnson further testified the property in question was raw undeveloped land with no businesses or structures located thereon.

"… Since it is the burden of the Plaintiffs to prove … the property could not be equally or equitably divided, and they were unable to do so, a partition by sale is not appropriate."

11

The trial court thus entered a judgment "in favor of" Johnson. It did not order that the property be partitioned in kind or otherwise equitably divided.

Thereafter, the plaintiffs filed a postjudgment motion and an accompanying brief challenging the trial court's judgment in several respects. In particular, in addition to identifying purported factual inaccuracies in the trial court's findings, the plaintiffs contended that § 35-6A-8, Ala. Code 1975, of the Heirs Act provides that "a partition in kind should be ordered if not partitioned by sale or purchased by the other co-tenants." Thus, they argued that, having concluded that the property was not subject to partition by sale, the trial court should amend its judgment to partition the property in kind among the parties. Following the denial of their postjudgment motion, the plaintiffs appealed.

### Standard of Review

"Because the circuit court received evidence ore tenus, our review is governed by the following principles:

"'"'"[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment

12

is palpably erroneous or manifestly unjust."'" Water Works & Sanitary Sewer Bd. v. Parks, 977 So. 2d 440, 443 (Ala. 2007) (quoting Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005), quoting in turn Philpot v. State, 843 So. 2d 122, 125 (Ala. 2002)). "'The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.'" Waltman v. Rowell, 913 So. 2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So. 2d 77, 79 (Ala. 1985)). "Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts." Waltman v. Rowell, 913 So. 2d at 1086.'

"Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So. 2d 924, 929 (Ala. 2007)."

Bond v. Estate of Pylant, 63 So. 3d 638, 643-44 (Ala. Civ. App. 2010).

### Discussion

The Heirs Act seeks to protect the property rights of cotenant heirs susceptible to losing family-owned property by means of a forced sale. See generally Manson v. McNeil, 376 So. 3d 454 (Ala. 2022) (Mitchell, J., concurring specially). See also Stephens v. Claridy, 346 So. 3d 519, 520 (Ala. 2020) ("The Heirs Act presumes that a partition in kind can be ordered unless such a partition would 'result in great prejudice to the

13

cotenants.' § 35-6A-8(a), Ala. Code 1975."), and § 35-6A-7(a), Ala. Code 1975 (providing that if a petitioner, in his or her initial pleading, fails to state a preference for means of division, "the petitioner shall be deemed to have not requested partition by sale").  Section 35-6A-7(a) of the Heirs Act permits a cotenant heir to request the partition of jointly owned heirs property by filing a petition "request[ing] partition by sale."[2]  In that event, the Heirs Act affords the remaining cotenants first an opportunity to "buy all the interests of the cotenants that requested partition by sale" and, if that does not occur, permits the "cotenant that requested partition by sale … to buy all the interests of the other cotenants that requested partition by sale."  § 35-6A-7(e) and (f)(2).  Neither option occurred here. In such cases, the Heirs Act provides:  "If no cotenant elects to buy all the interests of the other cotenants that requested partition by sale, the court shall send notice to all the parties of that fact and resolve the partition action under Section 35-6A-8 to Section 35-6A-11 …."  § 35-6A-7(f)(8).

Section 35-6A-8, Ala. Code 1975, provides, in pertinent part:

---

[2]Remaining provisions of § 35-6A-7 deem a pleading seeking partition but not specifically stating a desire that the property be sold as not requesting partition by sale.  In this case, Johnson's answer indicated that the property could be equitably divided and thus should not be sold.

"(a)  If all the interests of all cotenants that requested partition by sale are not purchased by other cotenants pursuant to Section 35-6A-7, or, if after conclusion of the buyout under Section 35-6A-7, a cotenant remains that has requested partition in kind, <u>the court shall order partition in kind unless the court, after consideration of the factors listed in Section 35-6A-9, finds that partition in kind will result in great prejudice to the cotenants</u>. …

"(b) <u>If the court does not order partition in kind under subsection (a), the court shall order partition by sale pursuant to Section 35-6A-10</u> or, if no cotenant requested partition by sale, the court shall dismiss the action."

(Emphasis added.)

## I.

The plaintiffs contend that the trial court erred in holding that the property could be partitioned in kind -- as opposed to being sold -- because, they say, a partition in kind would greatly prejudice them.  See § 35-6A-8(a).  Specifically, the plaintiffs point to Washington's testimony as to her belief that the property could not practicably be divided because the two resulting parcels in the rear of the property would allegedly be landlocked, because of the need for providing easements, and because of the related costs of providing ingress/egress to those two parcels.

Section 35-6A-8(a) provides that when the interests of cotenants that requested partition by sale are not purchased, or when any remaining cotenant requests that heirs property be partitioned in kind,

15

the trial court "shall order partition in kind unless the court, after consideration of the factors listed in Section 35-6A-9, finds that partition in kind will result in great prejudice to the cotenants." Section 35-6A-9, Ala. Code 1975, includes the following factors for evaluating a request to partition heirs property:

"(a) In determining under subsection (a) of Section 35-6A-8 whether partition in kind would result in great prejudice to the cotenants, the court shall consider all of the following:

"(1) Whether the heirs property practicably can be divided among the cotenants.

"(2) Whether partition in kind would apportion the property in such a way that the aggregate fair market value of the parcels resulting from the division would be materially less than the value of the property if it were sold as a whole, taking into account the condition under which a court-ordered sale likely would occur.

"(3) Evidence of the collective duration of ownership or possession of the property by a cotenant and one or more predecessors in title or predecessors in possession to the cotenant who are or were relatives of the cotenant or each other.

"(4) A cotenant's sentimental attachment to the property, including any attachment arising because the property has ancestral or other unique or special value to the cotenant.

"(5) The lawful use being made of the property by a cotenant and the degree to which the

16

cotenant would be harmed if the cotenant could not continue the same use of the property.

"(6) The degree to which the cotenants have contributed their pro rata share of the property taxes, insurance, and other expenses associated with maintaining ownership of the property or have contributed to the physical improvement, maintenance, or upkeep of the property.

"(7) Any other relevant factor.

"(b) The court may not consider any one factor in subsection (a) to be dispositive without weighing the totality of all relevant factors and circumstances."

The trial court's application of § 35-6A-9 in this case was fact-intensive. The plaintiffs, in support of their claim that the above factors weigh in favor of a sale of the property in this case, accurately recount Washington's testimony below as resolving some of the foregoing factors in the plaintiffs' favor. However, her testimony was countered by other evidence supporting the trial court's conclusion that the plaintiffs nonetheless failed to demonstrate that the statutory factors as a whole weigh against a finding of prejudice to them in the event of partition in kind. For example, Johnson presented a potential solution to provide right-of-way access from the road to any resulting lots at the rear of the property -- a proposal that Washington could not dispute was a viable

17

option for equitable division. Further, Washington conceded both that the property possessed no natural impediments to creation of such a right-of-way and that while such a right-of-way might result in some additional costs -- a point on which no party offered actual evidence -- it did appear to present a possible solution.[3] Perhaps most importantly, Washington also conceded that she possessed no evidence suggesting that, in the event that road access was provided to the rear lots and the property was partitioned in kind rather than sold, she would receive less money for her resulting lot than for her one-third interest in the property if it were sold in its entirety.

The evidence further indicated that the parties' family had long held the property and that Johnson had a sentimental attachment to it as a result. Further, both Johnson and other family members apparently reside nearby, including a nephew who resides in the residence formerly

---

[3]Although Washington expressed general concerns about the "costs and difficulties" of partitioning the property in kind and who would be responsible for the costs, those concerns were unspecified. Further, Johnson proposed that an easement for access be provided on the property, not that an actual driveway, road, or other improvements be constructed by the parties. It is not explained how the costs related to a partition in kind in this case would differ from the costs associated with a partition by sale.

occupied by the parties' mother on adjacent property.[4]

Thus, we are unable to agree with the plaintiffs' argument that they successfully demonstrated that, under § 35-6A-9, partition in kind would result in great prejudice to them in this case. In rejecting their claim, we reiterate that the ore tenus standard is premised on the fact that the trial court had the opportunity to evaluate the demeanor and credibility of the witnesses. See Reed v. Board of Trs. for Alabama State Univ., 778 So. 2d 791, 795 (Ala. 2000). After having fully reviewed the record, we are, like the trial court, unable to conclude that the plaintiffs met their burden of proving that the property could not be fairly and equitably divided among the parties. See Cotton v. McMurtry, 440 So. 2d 1039, 1040 (Ala. 1983) ("The burden of proving that a parcel cannot be fairly and equitably divided is upon the party seeking a sale for division."). Cf. Stephens, 346 So. 3d at 523 (quoting Black v. Stimpson, 602 So. 2d 368, 370 (Ala. 1992))

---

[4]Although it appears undisputed that Johnson had not paid his one-third share of the annual taxes on the property every tax year and that Washington has, in some years, been forced to pay the entirety of the taxes, Johnson apparently did, according to his own testimony, contribute in some years, and he testified that, in the years he had not done so, he felt that he had matched his portion through physical labor maintaining the property -- a task for which he has apparently been solely responsible since the inception of the parties' joint ownership.

("'A trial court's finding that land cannot be equitably partitioned is entitled to a presumption of correctness and will be overturned only if plainly or palpably erroneous.'"), and Steadman v. Uptown Motors, Inc., 842 So. 2d 684, 685 (Ala. Civ. App. 2002) ("The trial court's determination of whether the property may be divided equitably among the joint owners is entitled to the ore tenus presumption of correctness."). Instead, the evidence supporting the factors set forth in § 35-6A-9 was disputed, and the trial court was tasked with resolving that dispute. See Bond, supra. According the trial court's findings the deference they are due, we are unable to conclude that the trial court's finding that the plaintiffs failed to show that the property cannot be partitioned in kind is palpably erroneous or manifestly unjust. Id.

## II.

The plaintiffs also seek relief based on purported factual errors contained in the trial court's judgment, which, they say, Johnson proposed and the trial court adopted as its judgment.

For example, the plaintiffs first point to the fact that the trial court's judgment appears to suggest that they "never had a survey conducted on the property" and also "produced no survey," which

20

findings, they say, were clearly belied by their evidentiary submissions at trial. As the plaintiffs correctly indicate, a survey of the property and a related appraisal were introduced into evidence at trial. Although the materiality of the trial court's finding to the judgment seems questionable, it appears, based on the context, that the trial court was inartfully pointing out that the plaintiffs had not offered a survey or appraisal of the property to prove that it would be less valuable if equitably divided and sold in individual lots.

The plaintiffs also challenge the trial court's finding that Johnson offered a proposed equitable means of partitioning the property in lieu of a sale. The plaintiffs contend that the evidence established that the property has a single means of ingress and that any rear lot would be landlocked. Contrary to this claim, as explained above, Johnson's proposed division specifically included a right-of-way to provide access to the two resulting parcels that would not have road frontage.

The plaintiffs next challenge the trial court's conclusion that the plaintiffs possessed "no knowledge" of regulations governing the proposed right-of-way or of municipal regulations. Instead, they say, Washington's testimony demonstrated that, as to any landlocked lot, the

21

parties "'would have to go through the City, there was something about egresses or ingresses or getting the neighbors and having to put a driveway all the way back.'" Plaintiffs' brief at 28. However, that testimony appears to make the trial court's point that, other than mere generalities, the plaintiffs offered no concrete evidence establishing that Johnson's alternate proposed partition in kind was legally unworkable.

In sum, any purported inaccuracies in its judgment aside, the trial court's judgment makes clear that, in resolving this matter, the trial court considered the disputed evidence in light of the relevant statutory factors and found that the evidence supported a partition in kind. We again see nothing, based on our own review of the record and the testimony recounted above, to suggest that the trial court's judgment is either palpably erroneous or manifestly unjust. See <u>Bond</u>, supra.

### III.

Finally, the plaintiffs contend that the trial court erred to the extent that it failed, despite concluding that the property was heirs property, to order the property either partitioned in kind or partitioned by sale as, they say, the Heirs Act requires.

It is well established that

"[p]artition of land at the instance of any adult tenant in common is a matter of right. If the land is not capable of an equitable division in kind, a sale for division is a matter of right, without regard to the interest of other tenants in common. Raper v. Belk, 276 Ala. 370, 162 So. 2d 465 (1964). The circuit court of the county in which the land is located has subject matter jurisdiction to partition the land, or to sell the land for division of the proceeds if the complaint alleges and it is proven that a fair and equitable partition in kind cannot be made. Meador v. Meador, 255 Ala. 688, 53 So.2 d 546 (1951)."

Sockwell v. Hyde, 503 So. 2d 817, 818 (Ala. 1986).[5]

Relying on language from § 35-6A-8, the plaintiffs correctly contend that when heirs property cannot be equitably divided, the court may order the sale of the property and the division of the resulting proceeds; alternately, they say, when the property can be equitably divided among its co-owners, § 35-6A-8(a) provides that the "the court shall order partition in kind." (Emphasis added.) We agree.

Here, the trial court, based on the evidence presented, concluded that the partition of the property by division would not greatly prejudice the cotenants -- a finding affirmed above. Having reached that

---

[5]Section 35-6A-3(c), Ala. Code 1975, explains that the Heirs Act "supplements" existing provisions of Title 35, Chapter 6 (governing general "partition" actions) and replaces only the portions of that chapter "that are inconsistent with [the Heirs Act]."

23

conclusion, the trial court was required under the Heirs Act to so divide the property in kind. In <u>Stephens</u>, supra, we explained: "If heirs property cannot be partitioned in kind, then a partition by sale must be ordered pursuant to § 35-6A-10, Ala. Code 1975." 346 So. 2d at 520. Applying the mandatory provisions of § 35-6A-8(a), the converse is also true. See <u>Steadman</u>, 842 So. 2d at 685 ("If a joint owner is unable to demonstrate that the real property cannot be equitably divided among the joint owners, the property must be partitioned and not sold."). More specifically, a trial court, having concluded that a sale was not warranted because a means of equitable partition in kind exists, may not simply take no further action and, in effect, deprive a cotenant of the legal right to seek partition.[6]

---

[6]To the extent that Johnson contends that the plaintiffs failed to argue that a partition in kind was required at any time before the filing of their postjudgment motion, we note that such an argument was not ripe until <u>after</u> the trial court had concluded that partition by sale was inappropriate. Moreover, the plaintiffs presented their claim to the trial court in their timely filed postjudgment motion and thus provided that court the opportunity to correct its error. Additionally, during closing remarks to the trial court, Johnson's counsel acknowledged that that court "has the authority to order this to be partitioned" and specifically requested that the court "order as a matter of law that it be done in the way … Johnson has proposed and not [be] sold."

## Conclusion

Based on the foregoing, we cannot say that the trial court erred in finding that the property can be partitioned in kind. That portion of the trial court's judgment is therefore affirmed. Because the trial court found that a partition in kind was possible, the trial court was required to order that the property be partitioned in kind. We thus reverse the trial court's judgment to the extent that it failed to do so, and we remand the matter for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Parker, C.J., and Bryan, Mendheim, and Mitchell, JJ., concur.